120

Accountant's Computer Services, Inc., Appellant, v. Kosydar, Tax Commr., Appellee.
Central Data Systems, Inc., Appellant, v. Kosydar, Tax Commr., Appellee.
The Andrew Jergens Co., Appellant, v. Kosydar, Tax Commr., Appellee.

[Cite as Accountant's Computer Services v. Kosydar (1973), 35 Ohio St. 2d 120.]

(Nos. 72-263, 72-660 and 72-860—Decided July 3, 1973.)

122

124

*Messrs. Roudebush, Adrion, Brown, Corlett & Ulrich* and *Mr. Charles J. O'Toole,* for appellant in case No. 72-263. (ACS).

*Messrs. Burke, Haber & Berick* and *Mr. Marvin S. Zelman,* for appellant in case No. 72-660. (CDS).

*Messrs. Dinsmore, Shohl, Coates & Deupree, Mr. Bart A. Brown, Jr., Mr. Scott B. Crooks* and *Mr. Thomas S. Calder,* for appellant in case No. 72-860. (AJC).

*Mr. William J. Brown,* attorney general, *Mr. Dwight C. Pettay, Jr.,* and *Mr. Peter A. Stratigos,* for appellee.

STERN, J. The essential issue common to each of these three cases is the applicability of the exception from taxation provided by R. C. 5739.01(B) for items of tangible personal property which are transferred, as an inconsequential element for which no separate charge is made, in conjunction with a transaction which also involves some significant degree of contracted-for service. Resolution of this issue necessitates an examination of the taxing scheme provided by statute in Ohio.

The Board of Tax Appeals, in its decisions, placed controlling weight upon the combined impact of two clauses found in R. C. 5739.01(B), *i. e.,* the amendatory "print-

ed matter'"[1] language, and the amendatory "excepting'"[2] language following the phrase "Other than as provided in this section, * * * ."

The board's argument is summarized by the following language from its decision in these cases: "The prefatory language in the 'personal service transaction' stating 'Other than as provided in this section * * *' *clearly* and *unambiguously dictates* that where a particular transaction is defined as a 'sale' by another phrase of Section 5739.01 (B), Revised Code, then the 'personal service transaction' exemption [exception] is not applicable."

The board's decision interprets the language of R. C. 5739.01(B) to require (1) taxation of all transactions involving "printed matter," regardless of inconsequentiality, and (2) that when such "printed matter" is transferred in conjunction with a service transaction the *entire* consideration paid is taxable, including that portion which may clearly and separately have been paid as compensation for the personal service rendered.

We cannot agree that the General Assembly intended such a serious and far-reaching construction of R. C. 5739.-01(B), *i. e.,* the imposition of a sales tax on professional, insurance, and personal service transactions, which, inconsequentially or otherwise, involved a transfer of "printed matter." It is our conclusion that the language of the statute neither compels nor alludes to the interpretation given it by the Board of Tax Appeals.

It is important to note that the so-called "personal

---

[1]The 1959 amendment to R. C. 5739.01(B) (128 Ohio Laws 421, 423) specified that the definition of "sale" and "selling" include:

"* * * all transactions by which printed, imprinted, overprinted, lithographic, multilithic, blueprinted, photostatic, or other productions or reproductions of written or graphic matter are or are to be furnished or transferred."

[2]The 1959 amendment to R. C. 5739.01(B) (128 Ohio Laws 421, 424) specifically excepted from taxation: "* * * professional, insurance or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made,"

service exception" language is misnamed, for the "item" which is excepted from taxation by that language is not the service. Rather, it is the "item" of tangible personal property which is transferred, as an inconsequential element for which no separate charge is made, incidental to the performance of a professional, insurance, or personal service transaction. The service never was taxed *per se*, and therefore cannot be excepted.

Essentially, the problem regarding the "printed matter" and the "personal service exception" amendments involves the question of what was the intention of the General Assembly. It should be noted that the "exception" language, as found in the original amendment to R. C. 5739.01 (B), read: "Other than as *herein provided*, * * *." (Emphasis added.) (128 Ohio Laws 424.) That language was amended, effective January 10, 1961, to read: "Other than as *provided in this section* * * *." (Emphasis added.) (129 Ohio Laws 974.) It appears, therefore, that the "exception" was to apply to *all* inconsequential transfers of tangible personal property *unless* some other portion of R. C. 5739.01 provided to the contrary. Finding no such provision as to "printed matter," we must conclude that "printed matter" *can* be the subject of such an excepted inconsequential transfer. The General Assembly has merely provided a means whereby it can, if and when it deems it necessary, specifically remove some class of tangible personal property from the breadth of the "exception."

That conclusion is not only called for by a strict interpretation of the statutory language, but it comports with the general intent of the Ohio tax scheme that sales taxes were not intended to be collected where the difficulty would be great compared to the insignificant revenue to be gained. Indeed, even if the language were subject to a different interpretation, the resulting ambiguity, of necessity, need be resolved in favor of the taxpayer, for no tax may be assessed by implication.

Furthermore, the "exception" language is not new to taxation. Prior to its being incorporated in R. C. 5739.-01(B) in 1959, similar language was found in R. C. 5739.02

(B) (13), to wit: The sales tax did not apply to "Professional, insurance, or personal service transactions which involve *sales* as inconsequential elements, for which no separate charges are made." (Emphasis added.) In the amendatory language in R. C. 5739.01(B), the word "sales" was replaced with the words "transfer of tangible personal property * * *," thereby emphasizing that *the exception was to apply not just to transactions involving items defined as sales, but to all transfers of "tangible personal property as an inconsequential element [of a service transaction], for which no separate charges are made."* (Emphasis added.)

Both before and after that amendment, this court has interpreted the applicable language to include potential exception for *all* items of tangible personal property. In *City Blue Printing Co.* v. *Bowers* (1955), 163 Ohio St. 6, this court considered the personal service exception as then found in R. C. 5739.02(B)(13). The holding therein did not say that all sales of printed matter, however inconsequential, were to be subject to taxation. This is evidenced by the inclusion in the syllabus of distinguishing factual language, and the following language from page 10 in that opinion, which provides:

"Although appellant did advise its customers *as to the copying process which was best suited* to their needs, the production of the copies themselves was largely mechanical. The machines or devices employed did the work, and those operating them were not required to be persons of extraordinary ability or expertness." (Emphasis added.)

We conclude that the intent of the General Assembly, in adopting the "printed matter" amendment of 1959, was to incorporate the decision in *City Blue Printing Co., supra,* but we find no reason to believe that they intended to go beyond the holding in that case and make any and all transfers of "printed matter" taxable merely because it is "printed matter."

Accordingly, we reject the argument of the Tax Commissioner as adopted by the Board of Tax Appeals. This is not, however, dispositive of the instant cases, for it must

also be determined whether the "exception" language is applicable to any of these three cases.

The problem lies in the fact that most transactions, to at least a limited extent, involve a mixed degree of *some* personal service and the transfer of *some* tangible personal property. No doubt, the difficulty of endeavoring to separate the entire charge in all mixed transactions, and the insignificant dollar amount of tax which would be realized by taxing inconsequential amounts of personal property, prompted the General Assembly to enact the so-called "personal service exception."

On this point, it is worth noting that the law of Ohio is in accord with California law as evidenced by 2 CCH (1972) All-State Sales Tax Reporter, 25-012,[3] which pro-

---

[3]"Regulation 1501. Service enterprises generally.—Persons engaged in the business of rendering service are consumers, not retailers, of the tangible personal property which they use incidentally in rendering the service. Tax, accordingly, applies to the sale of the property to them. If in addition to rendering service they regularly sell tangible personal property to consumers, they are retailers with respect to such sales and they must obtain permits, file returns and remit tax measured by such sales. If their purchases of tangible personal property are predominantly for consumption rather than for resale, they should not give resale certificates covering such purchases but should follow the procedure prescribed in the regulation governing 'Tax-Paid-Purchases Resold.'

"The basic distinction in determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service is one of the true objects of the contract; that is, is the real object sought by the buyer the service *per se* or the property produced by the service. If the true object of the contract is the service *per se*, the transaction is not subject to tax even though some tangible personal property is transferred. For example, a firm which performs business advisory, record keeping, payroll and tax services for small businesses and furnishes forms, binders, and other property to its clients as an incident to the rendition of its services is the consumer and not the retailer of such tangible personal property. The true object of the contract between the firm and its client is the performance of a service and not the furnishing of tangible personal property. Similarly, an idea may be expressed in the form of tangible personal property and that property may be transferred for a consideration from one person to another; however, the person transferring the property may still be

vides that, in California, in determining whether a particular transaction involves a sale of tangible personal property *or* the transfer of tangible personal property incidental to the performance of a service, a distinction must be made as to the *true object* of the transaction contract; "* * * that is, *is the real object sought by the buyer the service per se or the property produced by the service. If the true object of the contract is the service per se, the transaction is not subject to tax even though some tangible personal property is transferred.*" (Emphasis added.)

Quoting further, we find that in California: "* * * *When a transaction is [overall] regarded as a sale of tangible personal property, tax applies to the [entire] gross receipts from the furnishing thereof, without any deduction on account of the work, labor, skill, thought, time spent, or other expense of producing the property.*" (Emphasis added.)

Recent cases in Ohio demonstrate that we also tax the *entire* consideration paid in transactions which, of necessity, involved some insignificant and inconsequential amount of personal service, without deducting from the total consideration paid an amount attributed to the inconsequential personal service provided. See *Recording Devices* v. *Bowers* (1963), 174 Ohio St. 518; *Recording Devices* v. *Porter-*

regarded as the consumer of the property. Thus, the transfer to a publisher of an original manuscript by the author thereof for the purpose of publication is not subject to taxation. The author is the consumer of the paper on which he has recorded the text of his creation. However, the tax would apply to the sale of mere copies of an author's works or the sale of manuscripts written by other authors where the manuscript itself is of particular value as an item of tangible personal property and the purchaser's primary interest is in the physical property. Tax would also apply to the sale of artistic expressions in the form of paintings and sculptures even though the work of art may express an original idea since the purchaser desires the tangible object itself; that is, since the true object of the contract is the work of art in its physical form.

"When a transaction is regarded as a sale of tangible personal property, tax applies to the gross receipts from the furnishing thereof, without any deduction on account of the work, labor, skill, thought, time spent, or other expense of producing the property."

*field* (1972), 30 Ohio St. 2d 208; *Columbus Coated Fabrics* v. *Porterfield* (1972), 30 Ohio St. 2d 307; and *Koch* v. *Kosydar* (1972), 32 Ohio St. 2d 74.

This long standing practice acknowledges that: (1) Nearly all transactions are, of necessity, mixed transactions involving at least a slight degree of personal service, and (2) where this degree of personal service is of insignificant consequence, both the practical problem of attributing to such service a percentage of the entire consideration paid, and the insignificant effect it would have on the amount paid in taxes, make such a distinction unreasonable and unnecessary.

This problem was well analyzed in *Goodyear Aircraft Corp.* v. *Arizona State Tax Comm.* (1965), 1 Ariz. App. 302, 306, 402 P. 2d 423, which set forth the following *possibilities* regarding mixed sales of services and property:

"1. The service is the main item sold and the property sold is incidental thereto and not separately charged. (Not a taxable sale as a sale of services.)

"2. The services and property sold can be readily separated. (One tax exempt and the other taxable.)

"3. The service sold is incidental to the property and not separately charged. (Taxable in gross.)"

That court, recognizing that the category into which a vendor falls is a *question of fact* to be determined in light of all the evidence, then stated:

"*When there is a fixed and ascertainable relationship between the value of the article and the value of the service rendered in connection therewith so that both may be separately stated,* then the vendor is engaged in both selling at retail and furnishing services and is subject to the tax as to one and tax exempt as to the other. *Where the property and the services are distinct and each is a consequential element capable of ready separation, it cannot be said one is an inconsequential element within the exemption provided by the statute.* See *Rice* v. *Evatt,* 144 Ohio St. 483, 59 N. E. 2d 927, 157 A. L. R. 572 (1945)."

It can be argued that the cases at hand should be treated

as falling into the second of the possibilities set forth above, *i. e.*, separable. However, such an argument needs to be supported by a factual analysis which finds that the property transferred and the personal service rendered are distinct, consequential elements having a fixed and ascertainable relationship between the value of the property and the value of the service rendered, so that both may be separately stated. Cases cannot, however, be so categorized on the theory that no personal service, however inconsequential to the overall transaction, should ever be taxed.

*Rice* v. *Evatt* (1945), 144 Ohio St. 483, which is an example of a factual situation falling within the second possibility is readily distinguishable from the three cases at hand. It involved an optometrist who did not separate his charge for professional examination from his charge for glasses and other items of personal property transferred. Two separate and distinct transactions were being performed therein; one, a purely professional service, and the other purely a sale of tangible personal property. However, whether treated as a separable mixed transaction (the second possibility), or as two independent transactions, the fact they were singularly billed was of no consequence. The cases now before us, however, do not fall within this possibility, and cannot be so easily disposed of. Nor was it intended that they be so disposed of.

The General Assembly has long been aware of this court's interpretation of the so-called "personal service exception" language, and of this court's application of the economical and functional inconsequentiality test which, prior to and after the amendment of the "exception" language, was utilized to determine the *true object* of mixed transactions for taxation purposes. Had they wished to effect a change in this manner of taxing insignificant service transactions which, of necessity, occur in conjunction with a consequential sale of tangible personal property, they would have done so.

If the Ohio taxation scheme is to be recognized, the cases we have before us this day must be decided by appli-

cation of the same tests as have heretofore been used. Having concluded that a sale has occurred, it must then be determined whether a consequential professional, insurance, or personal service is involved. If not, then the exception cannot be available, and the *entire* transaction is taxable. If, however, such a consequential service *is* rendered, then it must further be ascertained whether the transfer of the tangible personal property is an inconsequential element of the transaction. If so, then the "exception" provides that none of the consideration paid is taxable.

To accomplish this, the Tax Commissioner, the Board of Tax Appeals, and this court, as necessary, must examine the *real object sought by the buyer, i. e.*, the service *per se* or the property produced by the service, and determine if it was the buyer's object to obtain an act done personally by an individual as an economic service involving either the intellectual or manual personal effort of an individual, or if it was the buyer's object to obtain only the saleable end product of some individual's skill. *Koch* v. *Kosydar, supra* (32 Ohio St. 2d 74).

In accordance with the analysis set forth herein, we dispose of each of these cases upon the basis of the particular factual situations in each, as evidenced by the record.

Case No. 72-263, Accountant's Computer Service, Inc. (ACS).

In case No. 72-263 (ACS), the taxpayer receives raw material and transcribes it onto key punched cards, which, *by the use of a data processing machine*, are sorted, classified and rearranged. This print-out is then *delivered to the supplier of the raw material*, and it is *he* who then studies, alters, analyzes, and adjusts it. No such studying, alterations, analysis, adjustments, or other potentially consequential personal services are contracted for or assumed by ACS.

This lack of a consequential personal service is further evidenced by the fact that the object contracted for was the rearranged form of the raw material, *i. e.*, "write-up work" previously performed manually by the accountant

(buyer, in this instance) or his staff, and it was valuable not because it was produced *by* ACS, but merely because it was produced.

The production of this end product was almost entirely accomplished by the data processing machine, and although persons may have special training in operating this machine, their training is not related to the *real object* sought, i. e., the rearrangement of the raw material.

In short, ACS represents a classic example of man's use of his intellectual skill to conceive of a process whereby a task, which heretofore took longer, can now be accomplished in a relatively short time. As a result of this development, ACS can offer for sale the *end product* of this skill, i. e., "write-up work."

We conclude that such a process, at best, represents a mixed transaction in which the limited *personal service* was inconsequential to the object sought and sold. Accordingly, we hold that the *entire* transaction is taxable, with no inconsequential allowance for the insignificant personal service rendered.

Case No. 72-660, Central Data System, Inc. (CDS).

The statement of facts, as pertains to case No. 72-660 (CDS), contains an essential added element of utmost importance. That is, CDS obtains information from its clients for *analysis* of business problems. The company's professional workers apply *thinking* to the customer's present system.

It was this *analysis* and *thinking* by individuals skilled in solving business problems that was the *real object* sought in this instance. The data processing machines and their print-outs were used to assist CDS personnel in rendering their personal service, reducing their time spent on manual sorting work so as to allow more time for the application of their skills at solving their client's business problems. The transferred "printed matter," in this instance, was valuable not because it existed, but because it existed as a result of the personal service efforts of CDS personnel.

The personal service was the main item contracted for,

**134**

and the "printed matter" constituted an inconsequential element for which no separate charge was made. Accordingly, we hold that the sale of the tangible personal property is to be excepted from taxation by R. C. 5739.01(B), resulting in no taxation of any portion of the consideration paid.

Case No. 72-860, The Andrew Jergens Co. (AJC).

The third and final case, case No. 72-860 (AJC), is an even clearer example of a transaction in which the *real object* sought was the service *per se*, and not the end product produced by the service. The facts show that AJC contracted with A. C. Neilsen Company, a market research organization, whose function was to provide services which consisted of *compiling statistical data*; to *interpret* this data in order to determine marketing information; to *analyze, interpret* and *present* to its customers (AJC) the statistical information compiled; and to *assist* AJC's *management* in making marketing decisions based on this data. Specific requests were made by AJC, which requests changed from time to time, and two of Neilsen's account executives, whose duty it was to *analyze, interpret* and *present* to AJC's management the information developed by Neilsen in a meaningful and useful manner, were assigned to AJC's account.

Clearly, it was the personal service of Neilsen and its staff which was contracted for in this instance. It was the intellectual and manual personal efforts of employees of Neilsen that was sought by AJC, and not the inconsequential tangible personal property which was transferred, for purposes of communication, as an incidental element without a separate charge. Accordingly, we conclude that, here too, the sale of the transferred tangible personal property is to be excepted from taxation by R. C. 5739.01(B), resulting in no taxation of any portion of the consideration paid.

For the reasons set forth herein, we hold that the decision of the Board of Tax Appeals in case No. 72-263 (ACS) is reasonable and lawful, and therefore is affirmed. In cases Nos. 72-660 (CDS) and 72-860 (AJC), the decisions of the

Board of Tax Appeals are unreasonable and unlawful, and therefore are reversed.

*Decision in case No. 72-263 affirmed.*
*Decision in case No. 72-660 reversed.*
*Decision in case No. 72-860 reversed.*

O'NEILL, C. J., CELEBREZZE and W. BROWN, JJ., concur.
HERBERT, J., concurs in the judgments only.
CORRIGAN and P. BROWN, JJ., dissent in case No. 72-263 and concur in the judgments in cases Nos. 72-660 and 72-860.