THE MAY COMPANY, APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as May Company *v.* Lindley (1982), 1 Ohio St. 3d 6.]

(No. 81-1746—Decided July 7, 1982.)

*Messrs. Barkan & Robon, Mr. William I. Barkan, Mr. Marvin A. Robon* and *Mr. George F. Koinis,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Mark A. Engel,* for appellee.

*Per Curiam.* The first issue presented for resolution herein is whether the transactions in question are "sales" within the meaning of R.C. 5739.01(B). In part, R.C. 5739.01(B) provides that:

" 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, *** for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever ***. *** Other than as provided in this section, 'sale' and 'selling' do not include *** personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made."

Clearly, the watch movements are tangible personal property.[1] Equally clearly, possession to the same is transferred for a consideration. Therefore, absent some exemption, the transactions constitute taxable "sales." Appellant contends that such exemption exists by virtue of the last sentence of R.C. 5739.01(B)—the transactions are "personal service transactions which involve the transfer of tangible personal property as an inconsequential element."

This court has been confronted with similar arguments in the past when dealing with the taxability of purportedly mixed transactions, *i.e.,* where the sale also involves a personal service element. In this type of situation, we have held that "[i]n determining whether a 'sale' of tangible personal property may be excepted from the sales tax by the last sentence of R.C. 5739.01(B), the proper test is to determine whether the transaction involves a consequential or inconsequential professional, insurance, or personal service. If the service rendered is inconsequential, the exception is not available and the *entire* transaction is taxable. If a consequential service is rendered, then it must be ascertained whether the transfer of the tangible personal property was an inconsequential element of the transaction. If so, then none of the consideration paid is taxable." (Emphasis *sic.*) *Accountant's Computer Services* v. *Kosydar* (1973), 35 Ohio St. 2d 120 [64 O.O. 2d 72], paragraph one of the syllabus.

The threshold question, therefore, is whether the transactions at issue involve a consequential or inconsequential personal service. Although the decision of the Board of Tax Appeals leaves some question as to the board's resolution of this question, our review of the record convinces us that the personal service rendered herein was inconsequential. Based upon the record, it appears that the only service performed by appellant was the substitution of watch movements. Moreover, were we to assume, *arguendo,* that there was a consequential personal service rendered, appellant's cause is not assisted thereby. In such a case, it is necessary to ascertain the "true object" of the customer; that is, "is the real object sought by the buyer the service *per se* or the property produced by the service." *Accountant's Computer Services* v. *Kosydar, supra,* paragraph two of the syllabus.

The record is devoid of probative evidence disclosing the customer's "true

---

[1] In pertinent part, R.C. 5701.03 provides as follows: "As used in Title LVII of the Revised Code, 'personal property' includes every tangible thing which is the subject of ownership, whether animate or inanimate ***."

object."[2] We have repeatedly and consistently held that a party seeking exemption from taxation has the burden of demonstrating that he meets the statutory qualifications for such exemption. *Co-operative Pure Milk Assn.* v. *Kosydar* (1976), 45 Ohio St. 2d 23, 24 [74 O.O. 2d 47, 48]; *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407 [47 O.O. 313], paragraph two of the syllabus. Appellant herein has failed to satisfy this burden.

In considering the assessment as it related to category (4)—"repairs other than Timex"—the Board of Tax Appeals affirmed the Tax Commissioner's determination that all receipts in this category were taxable.[3] The basis for this determination was appellant's failure to separate the cost of labor from the cost of parts or materials.

Appellant contends that the commissioner's determination is *per se* arbitrary and unreasonable because it failed to disclose any exempt sales. The fact that the commissioner failed to find any exempt sales is not determinative. See *Rice* v. *Evatt* (1945), 144 Ohio St. 483 [30 O.O. 129]. The critical question is whether there was a clear separation of charges between labor and material. *Wilson* v. *Glander* (1949), 151 Ohio St. 479 [39 O.O. 298]. The record herein fails to demonstrate such a "clear separation." Under the facts of the instant cause, the decision of the Board of Tax Appeals is neither unreasonable nor unlawful and is, therefore, affirmed.

*Decision affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and KRUPANSKY, JJ., concur.

HOLMES, J., dissenting. The personal service rendered here is definitely not inconsequential. To the contrary, the major thing sought by the customer in taking his watch into the May Company is the cleaning and repairing of such watch in order to

---

[2] If anything, the evidence shows that appellant's customers were made aware of the fact that the service being rendered was not of paramount importance. For example, the cross-examination of one of appellant's witnesses disclosed the following:

"Q. ***but you replaced the movement with a reconditioned movement?

"A. Yes.

"Q. Does the customer know this is what you are doing? ***

"A. Our people are told to tell the customer that, yes, so they don't think they are getting a new product.

"Q. In other words, the customer knows that they are leaving you the watch and when they get the watch back there is a reconditioned movement in there?

"A. Yes.

"Q. So they realize that they are paying you for a reconditioned movement and not that you are giving their own movement back once you cleaned and oiled it?

"A. Yes."

[3] The commissioner's determination was based upon a "test check" made pursuant to R.C. 5739.10 and 5739.13.

restore its timekeeping capabilities. The mere fact that the watch movement of another previously repaired watch is inserted into the case does not render such exchange a sale within the meaning of R.C. 5739.01(B). Legally, no sale was effected for sales tax purposes.