INTERACTIVE INFORMATION SYSTEMS, INC., APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLANT.

[Cite as Interactive Information Systems, Inc. *v.* Limbach (1985), 18 Ohio St. 3d 309.]

(No. 84-1858—Decided July 24, 1985.)

*Rendigs, Fry, Kiely & Dennis* and *Thomas S. Shore, Jr.,* for appellee.
*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellant.

*Per Curiam.* The sole issue presented by this case is whether the appellee's computer hardware qualified for the statutory exemptions from sales and use taxes by virtue of its use in the production of computer software. Although R.C. 5739.02 and 5741.02 respectively impose a sales and use tax on "each retail sale" and the use of "tangible personal property" in this state, the appellee contends that its computer hardware is excepted from sales tax pursuant to R.C. 5739.01(E)(2) and, therefore, from use tax pursuant to R.C. 5741.02(C)(2).[1]

R.C. 5739.01(E)(2) provides, in relevant part:

"(E)  'Retail sale' and 'sales at retail' include all sales *except* those in which the purpose of the consumer is:

"* * *

"(2)   * * * [T]o use or consume the thing transferred directly in the *production* of tangible personal property * * * for sale *by manufacturing* [or] processing * * *." (Emphasis added.)

---

[1] R.C. 5741.02(C)(2) excepts from use tax "[t]angible personal property * * *, the acquisition of which * * * would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code." For appellee's hardware to be excepted from use tax, therefore, it must be excepted from sales tax pursuant to R.C. 5739.01(E)(2).

Appellee asserts that it qualifies for this exception because its computer hardware is used to "manufacture" computer software. Based upon the definition of "manufacturing," which was set forth at R.C. 5739.01(S) at the time of the assessment of the disputed tax, we must reject the appellee's assertion.

R.C. 5739.01(S) provided:

" 'Manufacturing' or 'processing' means the *transformation or conversion of material or things* into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

While the appellee produces tangible personal property in the form of encoded magnetic tapes, such production is only in a very narrow sense the result of "manufacturing" or "processing" as those terms were defined by R.C. 5739.01(S). The appellee does not transform or convert *"material* or *things* into a different state or form" until it actually begins to encode the magnetic tape with the program that it has previously developed on its computer.[2] Prior to encoding the tape, the appellee is dealing with intangibles — ideas, plans, procedures, formulas, etc.; and, although these intangibles are in some respects transformed or converted (or "organized") into a different state or form, such transformation or conversion is *not* "manufacturing" because no *"material* or *thing"* has been transformed or converted.[3]

In that the appellee herein did not engage in "manufacturing" (as that term was defined in R.C. 5739.01[S] and applied in R.C. 5739.01[E][2]) until it actually encoded the magnetic tapes with the programs that it had previously developed, we hold that the Board of Tax Appeals erred in modifying the appellant's final order of assessment to except from sales and use taxes those items of computer hardware that were used by the ap-

---

[2] The Board of Tax Appeals, prior to the instant case, has applied this analysis to the production of computer diskettes. In *AccuRay Corp.* v. *Lindley* (1981), BTA case No. 80-D-599, the board held that the computer hardware utilized by AccuRay in the development of computer programs was not used in "manufacturing"; but, the board found that the hardware that actually transferred programs onto blank diskettes (thereby transforming the diskettes [tangible "things"] into different states or forms) *was* used in manufacturing and was, therefore, excepted from sales and use taxes.

[3] This court has previously addressed the meaning of "manufacturing" as it was set forth in R.C. 5739.01(S). In *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 173 [59 O.O.2d 178], we stated that "* * * [i]f the primary use or consumption of an item of tangible personal property is made directly in the process of transforming or converting *tangible personal property into tangible personal property* for sale, then it is excepted from taxation." (Emphasis added.) This statement, requiring that a *tangible* "material or thing" be transformed or converted in order for the manufacturing exception to apply, is in accord with the commonly accepted definitions of "material" and "thing."

pellee in the preparation and development of computer programs. We remand the cause to the Board of Tax Appeals for a determination as to which items of hardware, if any, should be excepted from taxation because they were used *directly* in the encoding of magnetic tapes for sale to the appellee's customers.

*Judgment accordingly.*

CELEBREZZE, C.J., SWEENEY, LOCHER, COOK and DOUGLAS, JJ., concur.

DOUGLAS, J., concurs separately.

HOLMES and WRIGHT, JJ., dissent.

COOK, J., of the Eleventh Appellate District, sitting for C. BROWN, J.

DOUGLAS, J., concurring. While I am heartened that the majority herein does not attempt to "squeeze" an exception out of R.C. 5739.01 for the taxpayer in this case, it is unfortunate that the majority failed to exercise similar restraint in *Procter & Gamble Co.* v. *Lindley* (1985), 17 Ohio St. 3d 71, where it chose instead to "squeeze" an exception out of R.C. 5739.01(E)(1) for the taxpayer therein.

WRIGHT, J., dissenting. I cannot join in the majority opinion for the reasons that follow.

We have consistently held that this court has only a limited right of review in cases appealed from the Board of Tax Appeals. We are not to overturn decisions of the board unless they are unreasonable or unlawful. See, *e.g., Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53 [54 O.O.2d 191], paragraph one of the syllabus; *Buckeye Power* v. *Kosydar* (1973), 35 Ohio St. 2d 137 [64 O.O.2d 82], paragraph one of the syllabus. I am satisfied that the board's decision, which exempted from sales and use taxes most items of computer hardware that were used by appellee in the manufacturing and processing of its computer programs, met the test noted above.

Although the majority fails to deal either directly, thoroughly, or convincingly with the direct-use-and-manufacturing exemption, it is quite apparent that the exemption is fully applicable herein. This exemption has been the subject of a number of decisions by this court. See, *e.g., Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163 [59 O.O.2d 178]; *Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113 [63 O.O.2d 195] *Southwestern Portland Cement Co.* v. *Lindley* (1981), 67 Ohio St. 2d 417 [21 O.O.3d 261]; and *Youngstown Building Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363 [5 O.O.2d 3].

In *Youngstown, supra,* this court in the syllabus set forth the basic test for determining whether particular items of property are excepted under R.C. 5739.01(E)(2) and 5739.01(S):

"In determining whether tangible personal property is used or consumed directly in production of tangible personal property for sale by manufacturing or processing, and, therefore, whether its sale or use is excepted from taxation under the provisions of subdivision (E)(2) of section 5739.01, or subdivision (C)(2) of section 5741.01, Revised Code, the test is not whether such property is essential to the operation of an 'integrated plant,' the test to be applied being, *when* does the actual manufacturing or processing activity begin and end, and is the property used or consumed *during and in the manufacturing or processing period.*" (Emphasis *sic.*)

In determining when the manufacturing process begins and ends, we must decide whether the process at issue is an excepted one or one that is preliminary or preparatory to manufacturing. *Southwestern Portland Cement Co., supra,* at 421. This court in *Interlake* v. *Kosydar* (1975), 42 Ohio St. 2d 457, 459 [71 O.O.2d 436], stated that "[t]he manufacturing process for which a beginning and end must be determined is the one that produces the marketable product." In the present case, the "marketable product" of appellee is clearly the software programs which it sells to the general public.

Furthermore, "manufacturing" is defined as the transformation of a thing into a different state or form from that in which it originally existed. See *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407 [47 O.O. 313], paragraph four of the syllabus; and R.C. 5739.01(S). In other words, manufacturing is that process which changes the form of tangible personal property into a marketable product. *Canton Malleable Iron Co.* v. *Porterfield, supra,* at 170. In that respect, appellee's manufacturing process transforms *the initial conceptual design into the ultimate magnetic tape or marketable product,* existing in a different state than it did originally.

I am therefore of the opinion that appellee produces tangible personal property in the form of encoded magnetic tapes and that such production is the result of "manufacturing" or "processing" as those terms were defined by R.C. 5739.01(S). The appellee does in fact transform or convert *"material* or *things* into a different state or form." I would stress that the process begins with an idea and ends with encoding the magnetic tape with the program that it has previously developed on its computer. While it is true that the subject equipment is used for some testing which is outside the manufacturing process, it is undisputed that the primary and principal use of this equipment is for the manufacturing process noted above.

Thus, the result achieved by the majority is an unnecessary exercise which conflicts with logic, as well as notions of judicial and administrative economy and efficiency. In the last paragraph of its opinion, the majority concludes: "We remand the cause to the Board of Tax Appeals for a determination as to which items of hardware, *if any,* should be excepted from

taxation because they were used *directly* in the encoding of magnetic tapes for sale to the appellee's customers." (Emphasis added in part.) Unfortunately, the majority has failed to enlighten either this writer or the board as to which items, *"if any,"* should be subject to taxation. In light of the dearth of instruction provided by the majority opinion, upon remand the board may very well reach a substantially similar, if not identical, result.

The board has already acted upon this matter once. Now, with essentially no additional guidance, the board must act yet again upon precisely the same matter. Such use of the board's time and resources is utterly unwarranted, and, thus, I must respectfully dissent.