COMPUSERVE, INC., APPELLANT, *v.* LINDLEY, APPELLEE.

(Nos. 86AP-376 and 86AP-377—
Decided October 27, 1987.)

*Bricker & Eckler* and *Charles F. Glander,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Christine Mesirow,* for appellee.

BADGER, J. This is an appeal by appellant, CompuServe, Inc., from two decisions by the Ohio Board of Tax Appeals, holding that appellant's computer software was tangible property subject to the Ohio sales, use and business personal property taxes.

The two Ohio Board of Tax Appeals ("BTA") decisions regarding the taxability of appellant's computer software were consolidated on appeal to this court. One decision involved business personal property tax assessments issued by appellee, the Ohio Tax Commissioner, to appellant for the tax year 1980. Appellant had included the costs of its computer software as other taxable intangibles under Schedule 10 of appellant's 1980 Ohio corporation return of taxable property. Appellee deleted the software costs from Schedule 10 and listed and taxed these costs as part of the true value of appellant's computer hardware under Schedule 4 of appellant's return. Appellant appealed appellee's decision to the BTA on taxing the software as tangible business personal property pursuant to R.C. 5709.01(B)(1), instead of taxing it as "other taxable intangibles" as defined in R.C. 5701.09. The BTA upheld treatment of the software costs as part of the value of appellant's tangible computer hardware. The BTA based its decision on the fact that the software was stored on tangible computer tapes, and that the software rendered the computer hardware operable, thereby enhancing the hardware's value.

The second BTA decision consolidated in this court for appeal involved a sales and use tax assessment, under R.C. 5739.02 and 5741.02, issued to appellant by appellee for the period of September 1, 1976 through August 31, 1979. On appeal to the BTA, appellant objected to this sales and use tax assessment which related to appellant's acquisition of computer software, the licensing of software, and the execution of agreements for the development of software. The BTA affirmed the sales and use tax assessment finding that the true object of each transaction was the receipt of tangible personal property, and that the accompanying personal services rendered by the authors of the software were an inconsequential element of each transaction.

Appellant contends that, when it purchased the software, it was purchasing intangible information produced by personal services and that the tangible tapes were only an inconsequential aspect of the transactions. Therefore, appellant has timely appealed the BTA's decisions and asserts the following assignments of error.

As to the business personal property tax assessed:

"I. The Decision and Order of the Board of Tax Appeals is unreasonable

and unlawful because it affirms the Tax Commissioner's assessment of computer software information which is not tangible property and, therefore, is not subject to taxation as tangible personal property in this State.

"II. The Decision and Order of the Board of Tax Appeals is unreasonable and unlawful, in that it is against the manifest weight of the evidence."

As to the sales and use tax assessed:

"I. The Decision and Order of the Board of Tax Appeals is unreasonable and unlawful because it affirmed the assessment of sales and use taxes upon the acquisition of computer software information, the licensing of computer software information and the execution of consulting agreements related to the development of computer software information, all of which are exempt from sales and use taxation in this State because such transactions do not involve the sale of tangible personal property.

"II. The Decision and Order of the Board of Tax Appeals is unreasonable and unlawful because it affirms the assessment of sales and use taxes upon the acquisition of computer software information, the licensing of computer software information and execution of consulting agreements related to the development of computer software information, all of which are exempt from sales and use taxation in this State because such transactions are personal services transactions within the meaning of Revised Code Sections 5739.01 and 5741.01.

"III. The Decision and Order of the Board of Tax Appeals is unreasonable and unlawful in that it is against the manifest weight of the evidence."

Appellant is an Ohio corporation which maintains a large bank of computers in its mid-Ohio headquarters and has branch offices throughout the United States. Appellant states that it provides computer-related services for the informational requirements of corporations, governments and individuals; and appellant's major functions are offering access to large central computers, computer software information, communication networks, and professional consultants. According to appellant, its customers access appellant's computer network by dialing a local telephone number which connects the customer to a local communication processor, a piece of hardware. This processor, appellant states, through its operating systems software, directs the customer to the proper applications software which solves the customer's informational problem in the central computer located at appellant's headquarters. Appellant says that the customer directs the computer's operation in analyzing the customer's question and that appellant does not process customer data. Appellant charges its customers by: (1) the amount of time the customer is connected with the computer; (2) the number of computer instructions the customer used in operating the computer; and (3) the amount of information the customer stores on peripheral computer devices.

Appellant states that computer hardware consists of a central processing unit, memory and peripherals such as disk drives and printers. Appellant defines "computer software" as an electronic set of instructions that causes computers to perform a particular task. Appellant specifies that there are two major types of software: operating systems ("systems") software and applications software. Systems software, appellant states, is used to instruct the computer on how to attack a problem, basically telling the computer how to operate. Appellant's systems software includes communications software used to connect remote users to the central pro-

cessor. Applications software, according to appellant, is designed to solve a particular problem or perform a particular task and is dependent upon systems software to function.

Appellant says it has obtained its software from various sources. Some of appellant's software has been created by appellant's staff and some software has been written pursuant to agreements with non-employee computer software authors. Appellant testified that, when software is written by non-employee authors, appellant pays a license fee, a royalty based on usage, or a combination of both, to these authors to obtain the right for appellant and appellant's customers to use the software. Appellant also states that most of the non-employee authors appellant uses contract to continue consulting and maintenance on the software they have created.

According to appellant, in designing computer software the author begins by analyzing the problem to be solved. At some point, the author "writes" the software information in computer language. The parties have stipulated that the software information can be transmitted into the computer's memory without the use of a physical medium, such as a tape. Appellant states that the most common ways of placing the information into the computer's memory are: (1) by typing it on the computer terminal's keyboard; (2) by electronically transferring it from a remote terminal keyboard through a communication line such as a telephone line; and (3) transferring it to inexpensive storage devices, such as disks or tapes. Most of the software which appellant had purchased for its use was bought on tapes. Appellant says it also stores software on disks and tapes.

Tangibility of Computer Software

Appellant asserts that computer software is not tangible property. Ohio's business personal property tax, under R.C. 5709.01(B)(1), sales tax, under R.C. 5739.02,[1] and use tax, pursuant to R.C. 5741.02, all taxed only tangible personal property at the time of the assessments in question, subject to certain exceptions. R.C. 5701.03 defines "personal property" to include "every tangible thing which is the subject of ownership, whether animate or inanimate * * *." The Ohio Revised Code does not define "tangible property." "Other taxable intangibles" is defined under R.C. 5701.09 as "every valuable right, title, or interest not comprised within or expressly excluded from any of the other definitions set forth in sections 5701.01 to 5701.09, inclusive, of the Revised Code." Computer software is not specifically discussed in any of the definitions in R.C. 5701.01 to 5701.09 and would not fall within any of the categories therein, unless software is determined to be a tangible item or to enhance the value of a tangible item.

To determine whether computer software is a tangible or an intangible item, we are guided by the treatment of computer software by other authorities. The Internal Revenue Ser-

---

[1] Effective July 1, 1983, automatic data processing and computer services, in which the true object of the transaction was not personal services, became subject to the sales tax. R.C. 5739.01(B)(3)(e) (140 Ohio Laws, Part II, 3215). The tax makes systems software programming a computer service which would be taxable if personal service was not the true object of the transaction. However, applications software is not considered "programming"; thus, it is not a computer service and not covered by the sales and use tax provisions of the computer services tax law. See Ohio Adm. Code 5703-9-46(A)(2)(c) and (A)(5) (effective Nov. 1, 1985).

vice ("IRS") in Rev. Proc. 69-21, Section 4 (reported in Internal Revenue Cumulative Bulletin 1969-2, at 303) has determined that purchased computer software may be treated as an intangible asset, unless the taxpayer has included the costs of software with the costs of computer hardware. The IRS also states in Rev. Proc. 69-21, Section 3, that:

"The costs of developing software (whether or not the particular software is patented or copyrighted) in many respects so closely resemble the kind of *research and experimental expenditures* that fall within the purview of section 174 of the Internal Revenue Code of 1954 as to warrant accounting treatment similar to that accorded such costs under that section. * * *" (Emphasis added.)

Other states have rendered varying opinions on the categorization of computer software for taxation. However, the majority of states have found that computer software is intangible property. See *State* v. *Central Computer Services, Inc.* (Ala. 1977), 349 So. 2d 1160; *James* v. *Tres Computer Systems, Inc.* (Mo. 1982), 642 S.W. 2d 347; *First Natl. Bank of Fort Worth* v. *Bullock* (Tex. Civ. App. 1979), 584 S.W. 2d 548; *Dist. of Columbia* v. *Universal Computer Assoc., Inc.* (C.A.D.C. 1972), 465 F. 2d 615; *Honeywell Information Systems, Inc.* v. *Maricopa Cty.* (Ariz. App. 1978), 118 Ariz. 171, 575 P. 2d 801; *In re Protest of Strayer* (1986), 239 Kan. 136, 716 P. 2d 588; *First Natl. Bank of Springfield* v. *Dept. of Revenue* (1981), 85 Ill. 2d 84, 421 N.E. 2d 175.

Some courts have defined "computer software" as intangible "knowledge" or "information." The appeals court for the District of Columbia in *Universal Computer Assoc., Inc., supra,* at 618, describes "computer software" as: "* * * the information derived by the machine [the computer] from the cards which stays in the computer, and which is employed repeatedly by the machine when it is used by Universal. What rests in the machine, then, is an intangible — 'knowledge' * * *." The Alabama Supreme Court in *Central Computer Services, Inc., supra,* at 1162, defined "computer software" as "intangible information."

Those courts finding that computer software is intangible property have based their findings on several different characteristics of computer software. Courts have often reviewed the way software information is created and transmitted to the computer in making a determination on whether software is intangible. The Texas Court of Civil Appeals in *First Natl. Bank of Fort Worth, supra,* realized that computer information can be transferred in several different ways. The court found that "[s]ome of the possible methods would not have involved a tangible object at all. For example, appellant's computer could have been programmed over the telephone or by hand." *Id.* at 550. The Missouri Supreme Court has similarly recognized that the information purchased need not be put on tape, but could be sent to the customer through electronic communications and fed directly into the computer. *James, supra.*

Because of the methods used to create computer software, the Missouri Supreme Court in *James* and the Texas Court of Civil Appeals in *First Natl. Bank of Fort Worth* also found that computer software is different from a tangible record or movie film. The court in *James, supra,* at 349-350, stated that a movie film is essential to broadcasting the intangible artistic efforts of the actors and the film itself is reused. By contrast, the computer tapes, the Missouri Supreme Court said, "are merely a medium to

convey the data and programs to the customer's computer. After they are used to program the computer they can be discarded." *Id.* at 349. The Texas Court of Civil Appeals agreed that "[u]nlike a phonograph record or filmstrip, when the information on the tape * * * is transferred to the computer, the tape is no longer of any value or importance to the user." *First Natl. Bank of Fort Worth, supra,* at 550. The Illinois Supreme Court in *First Natl. Bank of Springfield, supra,* at 91, 421 N.E. 2d at 178, similarly felt that computer programs are recorded on tape "for the sake of convenience and easy handling" and that computer software "tapes differ from a movie film, a phonograph record or a book, whereby the media used are the only practicable ways of preserving those articles."

Finally, courts have employed a "purpose of the transaction" test to find that computer software is intangible. In *First Natl. Bank of Springfield,* the Illinois Supreme Court described this test as deciding whether the transfer of a tangible item is the substance of the transaction or merely incidental to a service. The court found that the substance of the computer software transaction was the intangible information, not the tangible tapes. The Alabama Supreme Court also found in *Central Computer Services, Inc., supra,* at 1162, that there was only an incidental physical commingling of the intangible information sought by the customer and the tangible magnetic tapes. Thus, the essence of the transaction in the sale of computer software was the purchase of nontaxable intangible information. The Missouri Supreme Court in *James* and the Texas Court of Civil Appeals in *First Natl. Bank of Fort Worth* also used an · essence-or-purpose-of-the-transaction test to determine that computer software is intangible property.

The Supreme Court of Ohio in *Interactive Information Systems, Inc.* v. *Limbach* (1985), 18 Ohio St. 3d 309, 311, 18 OBR 356, 357-358, 480 N.E. 2d 1124, 1126, in determining the taxability of computer hardware also recognized that computer programs are intangible property when the court stated:

"* * * Prior to encoding the tape, the appellee is dealing with intangibles — ideas, plans, procedures, formulas, etc.; and, although these intangibles are in some respects transformed or converted (or 'organized') into a different state or form, such transformation or conversion is *not* 'manufacturing' because no '*material* or *thing*' has been transformed or converted." (Emphasis *sic*.)

The Supreme Court of Ohio also distinguished that the tapes were tangible, while the computer information was intangible.

Those courts that have found computer software to be tangible have based their decisions on the fact that the computer program was coded on a tangible medium, such as a computer tape. See *Citizens & Southern Systems, Inc.* v. *South Carolina Tax Comm.* (1984), 280 S.C. 138, 311 S.E. 2d 717; *Hasbro Industries, Inc.* v. *Norberg* (R.I. 1985), 487 A. 2d 124; *Chittenden Trust Co.* v. *King* (1983), 143 Vt. 271, 465 A. 2d 1100; and *Comptroller of the Treasury* v. *Equitable Trust Co.* (1983), 296 Md. 459, 464 A. 2d 248 (finding that only noncustomized computer software is tangible property).

We disagree with those courts that hold the real purpose in a computer software sale is to obtain the inexpensive tangible computer tape. The purpose in purchasing computer software, especially customized software as in the present case, is to obtain the computer information in the form of electronic impulses that can be transmitted to the computer's memory in a

variety of ways, including many non-physical means. This court agrees, therefore, with those courts and authorities that believe the way in which computer software is created and transmitted belies the argument that it is a tangible item. In the case *sub judice,* appellant obviously desired the customized computer information and not the incidental tapes through which the information was sent, as the record shows that appellant paid thousands of dollars for the computer programs whereas appellant states that sometimes the tape was returned to the vendor after the information had been transmitted to the computer. Appellant states that the same amount would be paid for the computer programs whether or not the programs were sent on a storage device such as a tape. For the foregoing reasons, this court finds that appellant's computer software is intangible property.

Other Ohio cases that have dealt with the taxability of different aspects of computer programming are distinguishable from the case at bar, which presents only the question of taxability of computer software. In *Interactive Systems,* as discussed above, the Supreme Court of Ohio only determined that computer *hardware* was subject to sales and use taxes. The Supreme Court of Ohio has also held that when a sales or contract transaction involves basically data processing, in which the purchaser provides the vendor with data which is then processed and presented to the purchaser in the form of computer printouts, the real object of the transaction is the tangible computer printouts; therefore, the transaction is subject to sales and use taxes. *Citizens Financial Corp.* v. *Kosydar* (1975), 43 Ohio St. 2d 148, 72 O.O. 2d 83, 331 N.E. 2d 435; *Lindner Bros., Inc.* v. *Kosydar* (1976), 46 Ohio St. 2d 162, 75 O.O. 2d 204, 346 N.E. 2d 690; and *Financial Computer*

*Services, Inc.* v. *Lindley* (1982), 70 Ohio St. 2d 243, 24 O.O. 3d 336, 436 N.E. 2d 1025. The Supreme Court of Ohio in *Union Central Life Ins. Co.* v. *Lindley* (1984), 12 Ohio St. 3d 80, 12 OBR 70, 465 N.E. 2d 440, held that when computer programs were purchased as a minor part of a package along with the use of terminals and printers, which were linked to the vendor's main computer, and operation manuals, then the programs would be considered as part of the sale of a tangible item. The case *sub judice,* however, does not involve the purchase of a "package" in which computer programs were only a minor part of the transaction, or data processing where the purpose is to receive a categorized printout. Appellant's main object in the present case was to receive the intangible computer information.

### Personal Property Tax

Appellant contends that the intangibility of appellant's computer software causes the software to be nontaxable as intangible property under R.C. 5709.01(B)(1). R.C. 5709.01(B)(1) mandates that "[a]ll personal property located and used in business in this state * * * [is] subject to taxation * * *." R.C. 5701.03 defines "personal property" to be "tangible thing[s] * * *." At first glance, since this court has held that computer software is an intangible item, it would appear that none of appellant's software would be taxed as tangible business personal property. However, in reviewing Ohio cases, this court has found that intangible incidental costs which enhance the value of tangible business personal property are considered part of the true value of the business personal property for tax purposes.[2] See

---

[2] R.C. 5711.18 requires that personal property be taxed at its true value.

*Gruen Watch Co.* v. *Evatt* (1944), 143 Ohio St. 461, 28 O.O. 393, 55 N.E. 2d 794; *Youngstown Sheet & Tube Co.* v. *Kosydar* (1975), 44 Ohio St. 2d 96, 73 O.O. 2d 353, 338 N.E. 2d 366; and *Twyman Films, Inc.* v. *Lindley* (1978), 54 Ohio St. 2d 176, 8 O.O. 3d 165, 375 N.E. 2d 428. In *Twyman,* the Supreme Court of Ohio included in the true value of movie film the cost of an intangible right to use the copyrighted film. The Supreme Court of Ohio in *Gruen* required that certain incidental charges be added to the price of watch movements. The court stated that property should always be taxed at its improved value, by whatever means improved, and that true value is the value that attaches to the property in the taxpayer's hands.

In the present case, we believe that appellant's systems software, although intangible, should be taxed as part of the true value of appellant's computer hardware because, as stated by appellant, the hardware cannot function without this systems software. The systems software thereby enhances the value of appellant's computer hardware.

The Kansas Supreme Court similarly found that operating systems software, although intangible, was taxable as tangible property as part of the value of computer hardware. The Kansas Supreme Court stated in *In re Protest of Strayer, supra,* at 143, 716 P. 2d at 593-594, that:

"* * * [W]e determine that under the tax statutes, software programs which constitute the operational programs, without which a computer cannot operate, have a value that is to be considered an essential portion of the computer hardware and are therefore taxable as tangible personal property in conjunction with the hardware. Application programs, those which are particularized instructions adopted for special programs, are intangible property not subject to the personal property tax for tangible property."

California also adopted a different tax treatment in 1972 for operating systems software and applications software. California only taxes "basic operational programs" which are fundamental and necessary to the functioning of the computer. Cal. Code, Revenue & Taxation, Sections 995 and 995.2.

Appellant and appellee, in the present case, appear to agree that the computer hardware cannot function without the operating systems software, whereas the applications software performs specialized tasks. Because the computer hardware would be inoperable without the systems software, we hold that the BTA was correct inasmuch as it found that the value of the systems software should be included and taxed as part of the true value of the tangible computer hardware under Schedule 4 of appellant's tax return. Nevertheless, the BTA erred in including applications software as part of the value of tangible computer hardware under Schedule 4, because applications software is not essential to making the computer function.

For the foregoing reasons, appellant's first assignment of error regarding the personal property tax assessment is sustained in part and overruled in part in that this court finds the BTA's decision on the personal property tax was reasonable and lawful as to appellant's systems software but was incorrect and unlawful as to appellant's applications software. Appellant's second assignment of error regarding the personal property tax is also sustained in part and overruled in part because, according to Ohio law, the BTA's decision regarding the personal property tax on appellant's systems software is not against the manifest weight of the evidence; however,

the BTA's decision regarding the personal property taxation of appellant's applications software is against the manifest weight of the evidence. This case must also be remanded to the BTA for a determination as to which of appellant's software programs were operational and which were applicational.

### Sales and Use Tax

Appellant contends, as to the second BTA decision, that appellant's computer software was not subject to Ohio sales and use taxes pursuant to R.C. 5739.02 and 5741.02 (as these statutes were written in the tax years under consideration).[3] R.C. 5739.02 levies a tax on retail sales in Ohio. A "sale" is defined, according to R.C. 5739.01(B)(1), as "[a]ll transactions by which title or possession, or both, of *tangible* personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted * * *." (Emphasis added.) R.C. 5741.02(A) levies a tax "on the storage, use, or other consumption in this state of *tangible* personal property * * *." (Emphasis added.) Thus, Ohio sales and use taxes at the time of the assessments in question could only be levied on tangible property, subject to certain exceptions. Because we have found that appellant's computer software is intangible, no sales and use taxes should have been assessed on the software.

Appellant asserts, and we agree, that in addition to being exempt from sales and use taxes because of its intangible nature, the computer software was exempt from sales and use taxes because the software purchase was substantially a personal service transaction. R.C. 5739.01(B)(5) states that a sale does not "include professional, insurance, or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made. * * *" R.C. 5741.02(C)(2) states that whenever a personal property or service transaction is exempt from sales tax it is also exempt from use tax.

The Supreme Court of Ohio has set forth, in paragraphs one and two of the syllabus in *Accountant's Computer Services, Inc.* v. *Kosydar* (1973), 35 Ohio St. 2d 120, 64 O.O. 2d 72, 298 N.E. 2d 519, a test to determine whether a transaction is substantially a personal service rather than the sale of a tangible item:

"1. * * * If a consequential service *is* rendered, then it must be ascertained whether the transfer of the tangible personal property was an inconsequential element of the transaction. If so, then none of the consideration paid is taxable.

"2. In determining whether a mixed transaction constitutes a consequential personal service transaction, a distinction must be made as to the *true object* of the transaction contract; that is, is the real object sought by the buyer the service *per se* or the property produced by the service." (Emphasis *sic.*)

This court has already determined that the transfer of the tangible magnetic tape was an inconsequential element of appellant's software transactions. Appellant has also stated that, when negotiating a contract for a software program, appellant often contracts for the services of a specific software author to write the program. The actual writing of the software program is a personal service and is the true object of the contract; therefore, no sales tax would accrue.

Appellee cites other Ohio sales tax

---

[3] See footnote 1.

cases, in which the transactions were taxable, asserting that these cases are not distinguishable from the instant case. The cases cited by appellee, however, are distinguishable because in all these cases the purchaser's real object was the receipt of a tangible product. Appellee cites cases in which the transaction was subject to sales tax because the object of the purchase was the receipt of a tangible design, drawing, or advertisement. *Federated Dept. Stores, Inc.* v. *Lindley* (1983), 8 Ohio St. 3d 35, 8 OBR 344, 456 N.E. 2d 1209 (the purchase of radio and television ads was considered to be the purchase of tangible products); *United States Shoe Corp.* v. *Kosydar* (1975), 41 Ohio St. 2d 68, 70 O.O. 2d 159, 322 N.E. 2d 668 (advertising materials were the primary object of the transaction); *Columbus Coated Fabrics* v. *Porterfield* (1972), 30 Ohio St. 2d 307, 59 O.O. 2d 376, 285 N.E. 2d 50 (artistic designs were taxed); *White Motor Corp.* v. *Kosydar* (1977), 50 Ohio St. 2d 290, 4 O.O. 2d 451, 364 N.E. 2d 252 (the purchase of engineering drawings used to order tools was taxed as the real object of the transaction). In *May Company* v. *Lindley* (1982), 1 Ohio St. 3d 6, 1 OBR 32, 437 N.E. 2d 295, also cited by appellee, the personal service was found to be an inconsequential portion of the transaction. In *May Company,* the repair of Timex watches by simply replacing one premade part was considered an inconsequential service. The cases involving data processing are also distinguishable from the present case because in each of these cases, the Supreme Court of Ohio focused on the fact that the vendor was only organizing data into a tangible computer printout and the printout was the real object of the transaction. *Statistical Tabulating Corp.* v. *Lindley* (1983), 3 Ohio St. 3d 23, 3 OBR 346, 445 N.E. 2d 1104; *Financial Computer Services* v. *Lindley, supra; Miami Citizens Natl.*

*Bank* v. *Lindley* (1977), 50 Ohio St. 2d 249, 4 O.O. 3d 427, 364 N.E. 2d 25.

In cases where the real object of the transaction was information or skill, however, the Supreme Court of Ohio and other Ohio courts have held that the buyer was purchasing a personal service, even though there may have been an inconsequential transfer of tangible items. See *Credit Bureau of Miami County, Inc.* v. *Collins* (1977), 50 Ohio St. 2d 270, 4 O.O. 3d 439, 364 N.E. 2d 27 (gathering of credit information was considered a personal service although there was an inconsequential transfer of a written report); *Allied Indus. Serv. Corp.* v. *Kasle Iron & Metals, Inc.* (1977), 62 Ohio App. 2d 144, 16 O.O. 3d 303, 405 N.E. 2d 307 (a designer and installer of a pollution control system was not selling goods, but was rendering a personal service); *Avco Broadcasting Corp.* v. *Lindley* (1978), 53 Ohio St. 2d 64, 7 O.O. 3d 145, 372 N.E. 2d 350 (the purchase of news and rating services was a purchase of information). In *Union Central Life Ins. Co.* v. *Lindley, supra,* at 83, 12 OBR at 73, 465 N.E. 2d at 444, the Supreme Court of Ohio also held that the purchase of systems modifications which involved "the design of program changes * * * was purely a service. Any tangible product which resulted from such requests would be limited to the device used for recording the program * * *." As discussed, appellant's real purpose in the case at bar was to purchase and use information and the skill or personal service of a computer software author. Any tangible tapes transferred as part of the transaction were inconsequential to appellant. Other states' courts have agreed that the purchase of customized computer software is a personal service transaction. *Measurex Systems, Inc.* v. *State Tax Assessor* (Me. 1985), 490 A. 2d 1192; *Maccabees Mut. Life Ins. Co.* v. *Dept. of Treasury,*

*Revenue Div.* (1983), 122 Mich. App. 660, 332 N.W. 2d 561.

For the foregoing reasons, this court sustains appellant's first and second assignments of error regarding the sales and use tax assessment because the computer software transactions herein involved the sale and use of intangible, rather than tangible, personal property and the purchase was substantially a personal service transaction. This court also sustains appellant's third assignment of error because the BTA's decision was against the manifest weight of the evidence. The order in case No. 86AP-376 is reversed in part, affirmed in part, and remanded. The order in case No. 86AP-377 is reversed.

*Judgment accordingly.*

WHITESIDE and McCORMAC, JJ., concur.

THOMAS D. BADGER, J., of the Knox County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

WHITESIDE, J., concurring. Although I concur in the opinion and in the judgment generally, I would overrule rather than affirm the third assignment of error since manifest weight of the evidence is not the test of review under R.C. 5717.04, which limits review on appeal to the issues of unreasonableness or unlawfulness of the decision of the Board of Tax Appeals. See, however, *Ace Steel Baling, Inc.* v. *Porterfield* (1969), 19 Ohio St. 2d 137, 48 O.O. 2d 169, 249 N.E. 2d 892. Since we have found the decision to be both unreasonable and unlawful with respect to applications software, there is no reason to consider manifest weight.