The Babcock & Wilcox Co., Appellant and Appellee, *v.* Kosydar, Tax Commr., Appellee and Appellant.

(Nos. 76-275 and 76-288—Decided December 22, 1976.)

252

Messrs. *Dargusch & Hutchins, Mr. Carlton S. Dargusch* and *Mr. Gerald A. Donahue,* for appellant and appellee.

*Mr. William J. Brown,* attorney general, *Mr. John C. Duffy, Jr.,* and *Mr. Michael L. Moushey,* for appellee and appellant.

### I.

*Per Curiam.* The taxpayer proposes initially that the blueprints, drawings and instruction booklets used during and in the manufacturing process or produced for sale with the final product are excepted from the sales tax by R. C. 5739.01(E)(2).

Taxpayer's engineering department designs power generation units specifically fitted to the customer's needs. The end product of the engineering department is a vellum, or master copy, from which blueprints are made or copied. Some of the blueprints are used by taxpayer's production employees during the process of manufacturing the component parts.

In many instances, the blueprints are recopied on Xerox machines located in the engineering department and various shop areas. Blueprints and instructions used in the shop area are often recopied when they are no longer legible from weld splatter, oil drops, damage or use. Drawings, blue prints and instructions are also reproduced and transferred directly to the customer for his information regarding the system's equipment.

Taxpayer argues that the blueprint or instruction booklet is a necessary item to the production worker since he is directed to perform his specific task by following the instructions set forth thereon much in the same manner as the driver of an automobile utilizes a road map.

The Tax Commissioner, although conceding that the blueprints and other printed paper materials are necessary in varying degrees, concludes that they do not perform, or directly relate to, changing the physical shape or form of the metals or materials. The Commissioner, conceding further that such materials are of great utility to the production personnel, concludes nevertheless that the materials are physically inert, and therefore do not directly relate to changing the shape or form of articles in the manufacturing process.

Both sides rely on R. C. 5739.01(E)(2) and 5739.01(S) to support their respective positions.

R. C. 5739.01(E)(2) provides, in pertinent part:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the customer is:

"* * *

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing,

254

or refining, or to use or consume the thing transferred directly in the production of tangible personal property * * * for sale * * *."

R. C. 5739.01(S) reads as follows:

"(S) 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

It should be noted that the latter section incorporates by reference subsection (E)(2), and expounds upon the purpose of the exception of the former by including "adjuncts" whose use is necessary in the manufacturing process.

This court, in *Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113, affirmed the enunciation established in *Canton Malleable Iron* v. *Porterfield* (1972), 30 Ohio St. 2d 163, which set forth the test for the allowance of the exception under subsection (S) of R. C. 5739.01, as follows:

"* * * three requirements an adjunct must fulfill to be excepted: (1) used at the same location; (2) used after the transforming or conversion has commenced; and (3) related to direct use or consumption in production."

The Commissioner argues that this court has considered the language of R. C. 5739.01(E)(2) many times, and cites the following language from *Jackson Iron & Steel Co.* v. *Glander* (1950), 154 Ohio St. 369, at page 373:

" 'To come within the exceptions from taxation imposed by the sales and use tax acts, the sale must be of (1) *items necessary and not merely facilitative to the actual business of producing tangible personal property which is to be sold*, (2) items used for transporting articles where such transportation is a part of the processing of such articles and (3) items used or consumed during the actual manufacturing or processing.

" 'In other words, for the purchase of an item to be excepted from taxation under the Sales Tax Act or the Use Tax Act the item must be *indispensable to and directly connected with the actual manufacture or processing of the particular article to be sold.*' "

The Commissioner is correct in his emphasis of this case as authority, for the reason that the language used therein respecting R. C. 5739.01(E)(2) seems to have withstood the test of time. However, the General Assembly, effective September 1, 1967, enacted subsection (S) of R. C. 5739.01 utilizing that language referred to above with reference to R. C. 5739.01(E)(2).

Taxpayer contends that a blueprint in the hand of a production worker while the product is being manufactured and while that production worker is engaged in the production process by following the instructions on the blueprint can be readily compared to a worker's use of a tool which is clearly excepted under those conditions. This court concludes that the taxpayer's position in this case, that the blueprints are used by production employees directly in the manufacturing process, is a more reasonable interpretation of R. C. 5739.01(S), as it incorporates R. C. 5739.01 (E)(2).

However, we are not persuaded by the use of the same analogy in taxpayer's claim regarding the excepted status of the Xerox machines. The machines are used to make copies of the blueprints for production personnel, not to produce tangible goods for sale. Nor can it be said that the machines fall within the exception of goods used or consumed directly in the production of tangible personal property. The entry of the Board of Tax Appeals adequately states the position of this court on this issue, when it stated:

"* * * the testimony of appellant's [taxpayer's] witnesses clearly indicated that the items in issue were purchased primarily to make blueprints and other copies to be utilized by the engineering department and production personnel."

We conclude, therefore, that although the blueprints,

drawings and instruction booklets are entitled to exception, the Xerox machines are not, and the decision of the Board of Tax Appeals is modified accordingly.

## II.

Taxpayer's second proposition of law is that payments for computer time-sharing where there is no transfer of title or possession are neither a sale nor a retail sale, and no tax should be levied thereon under R. C. 5739.02. Taxpayer's engineering department used computers owned by Service Bureau Corporation or General Electric Corporation for calculations in the design of pressure vessels and to control tapes that would guide a machine tool in the cutting of metal. The terminal located on the taxpayer's premises is connected to the computer. The information from the computer is transmitted to the taxpayer over a Bell Data phone in the form of electrical impulses that translate into a typewritten exposition of the calculation. The testimony herein revealed that the sole reason for taxpayer's contracting with either Service Bureau or General Electric was to pay for the use of their computer on an hourly basis. It is the assessment on those hourly charges only which is the subject of the appeal here. It is undisputed that the computer is an item of tangible personal property.

R. C. 5739.01(B) provides:

"(B) 'Sale' and 'selling' include *all transactions by which* title or possession, or both, of tangible personal property, is or is to be transferred, *or a license to use or consume tangible personal property is or is to be granted*; * * * for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever * * *." (Emphasis added.)

Although taxpayer concedes that this subsection standing alone may justify the conclusion reached by the Board of Tax Appeals, taxpayer disputes the reliance of the board on the recent case of *Citizens Financial Corp.* v. *Kosydar* (1975), 43 Ohio St. 2d 148, as authority. Taxpayer relies instead on the case of *Lakeside Truck Rental* v. *Bowers* (1962), 173 Ohio St. 108. A reading of that

case discloses that taxpayer's reliance is misplaced. The question in that case was "whether trucks used by a vendor in making deliveries of items sold to his retail customers are used 'directly in making retail sales'" within the meaning of R. C. 5739.01(E)(2). In *Citizens Financial, supra,* this court found that the rental of computer time was a "sale," within R. C. 5739.01(B), because such a rental constituted a license to use or consume tangible personal property, and was therefore not a "related personal service" as contended by the taxpayer therein. The record here discloses that the taxpayer's witness stated, "each user thinks the computer is his alone, because he is getting responses within seconds of the time that he keys in his information on his terminal." This hardly comports with the view taken by taxpayer, in its brief, that it had "no exclusive right to use the computers, no exclusive control of the computers * * *" and therefore no "license to use or consume" under the *Citizens Financial* case.

Accordingly, the decision of the Board of Tax Appeals that taxpayer was not entitled to a tax exception under R. C. 5739.01(B) for the computer time-sharing is reasonable and lawful.

### III.

Taxpayer contends next that certain transportation equipment used in transferring semi-finished manufactured goods to construction sites was improperly assessed. The disputed items include railroad cars used to transport large component parts from the taxpayer's manufacturing plants to the customer's construction site, and include the containers and lumber used in the same kind of shipping. It is noted that the containers are constructed to the taxpayer's specifications and after delivery are returned to its plants for further use. The lumber was used for making skids, crates and pallets required by the carrier in transporting component parts from the taxpayer's plant to the erection site.

Taxpayer contends such items may be excepted under R. C. 5739.02(B)(15) and (16), which read, as follows:

"(B) The tax does not apply to the following:

"* * *

"(15) Sales to persons engaged in any of the activities mentioned in division (E)(2) of Section 5739.01 of the Revised Code, of packages, including material and parts therefor, and of machinery, equipment, and material for use in packaging tangible personal property produced for sale, or sold at retail. Packages include bags, baskets, cartons, crates, boxes, cans, bottles, bindings, wrappings, and other similar devices and containers, and 'packaging' means placing therein;

"(16) Sales to persons engaged in manufacturing, processing, assembling, or refining, of handling and transportation equipment, except motor vehicles licensed to operate on the public highways, used in intra or inter plant transfers or shipments of tangible personal property in the process of production for sale by manufacturing, processing, assembling, or refining, where the plant or plants within or between which such transfers or shipments occur are operated by the same person."

The last two words of R. C. 5739.02(B)(16) are decisive herein. To begin with, the railroad cars in question are not used in transfers within or between plants operated by the "same person," taxpayer herein. The railroad cars are used to deliver component parts to the construction site of the customer where the components are later assembled. The containers, which are reuseable and returned, are also not used in intra or interplant transfer. They are delivered to the customer's location where the contents are assembled into the customer's generation system, not the taxpayer's.

Finally, the record does not affirmatively establish that the lumber in issue was used to package tangible personal property "produced for sale, or sold at retail." R. C. 5739.02(B)(15).

Also listed for exception herein were certain items of equipment and parts for same which were claimed to be used to store component parts at the erection site, as well as to transport these parts from the storage area to the assembly area. The record disclosed that some of these items were used as a tool shed and office at the erection site and that the items transported at the site were welding

equipment. No explanation of other use appears.

The exception is clearly limited to situations where both plants are operated by the "same person." Although the component parts are manufactured at a plant owned and operated by the taxpayer, it is manifestly evident that the place where they are erected is owned and operated by the customer.

Accordingly, the decision of the Board of Tax Appeals that taxpayer was not entitled to a tax exception provided by R. C. 5739.02(B)(15) and 5739.02(B)(16) is reasonable and lawful.

## IV.

The taxpayer also contends that Emerson fans and dust collector equipment were used during production for the protection of its employees and that such use excepts them from taxation by reason of R. C. 5739.01(E)(2).

Although the Board of Tax Appeals did except six of the eight categories of claimed safety and protective equipment, the above two categories were not included because they "were not clearly shown to be protection equipment."

The Tax Commissioner cites *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407, paragraph two of the syllabus, which reads:

"Statutes relating to exemption or exception from taxation are to be strictly construed, and one claiming such exemption or exception must affirmatively establish his right thereto."

The record discloses some testimony in support of the taxpayer's position. However, it is not the function of the court to weigh the evidence and substitute its judgment for that of the board. See *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137.

Consequently, we determine that the finding of the Board of Tax Appeals with respect to the claimed exception for the Emerson fans and dust collector equipment is neither unreasonable nor unlawful.

## V.

This last proposition concerns the ruling of the Board of Tax Appeals that patterns purchased by taxpayer and held for use and not for sale are excepted from sales tax

by reason of R. C. 5701.03. The Tax Commissioner appealed from that decision.

The Barberton plant has a foundry which is engaged in the production of various metal castings used in the steam generating systems. To make the castings, taxpayer purchased patterns from outside suppliers.

The Board of Tax Appeals concluded that these patterns were excepted from sales tax under R. C. 5701.03 which reads, in pertinent part, as follows:

"As used in Title LVII of the Revised Code, 'personal property' includes every tangible thing which is the subject of ownership, whether animate or inanimate, other than patterns, jigs, dies, or drawings, which are held for use and not for sale in the ordinary course of business * * *."

Both the Board of Tax Appeals and taxpayer rely on the following language in *General Motors Corp.* v. *Kosydar* (1974), 37 Ohio St. 2d 138, 148:

"R. C. 5701.03 excepts from the definition of 'personal property' patterns, jigs, dies, or drawings which are held for use and not for sale in the ordinary course of business. As was pointed out by this court in *Celina Mutual Ins. Co.* v. *Bowers* (1965), 5 Ohio St. 2d 12, and *Howell Air* v. *Porterfield* (1970), 22 Ohio St. 2d 32, *the Ohio sales and use taxes are not taxes on property, but are excise taxes on the exercise of the privileges incident to ownership.* The tax is levied on transactions with respect to the property. In the instant case, the property was purchased by appellant and resold to appellant's suppliers; *it was not held for use.* The jigs and dies are not, therefore, entitled to exception from the definition of personal property under R. C. 5701.03 * * *." (Emphasis added.)

In that case, General Motors used independent suppliers to manufacture certain tools necessary in producing automobiles. After selecting a supplier, General Motors sent a purchase order for a specific tool. When the tool was finished, General Motors would take title. However, the tool would remain with the supplier who would then use it to produce the parts for which it was designed, exclusively for General Motors. The Tax Commissioner

levied a tax on General Motors at the point it took title to the tools. This court reversed that determination, and stated that General Motors did not hold the tools for its own use. In the instant case, the taxpayer argued that it purchased patterns from outside suppliers which it subsequently used in the manufacturing process.

The Tax Commissioner contends that the tax at issue here is the sales tax, and that tax is levied upon the transaction by which a consumer purchases and a vendor sells tangible personal property. Therefore, the determination of the taxability of the sale is to be made at the moment of sale, i. e., at the time the supplier had possession of the patterns, just before title passed to the taxpayer herein. Consequently, R. C. 5701.03 has no effect upon the assessment of the sales tax in this case since that statute provides an exception for patterns which are *held*, not "going to be held," for use.

We agree with the interpretation of the Tax Commissioner concerning this transaction. R. C. 5739.01(B) provides, in pertinent part:

"As used in Sections 5739.01 to 5739.31, inclusive, of the Revised Code:

"* * *

"(B) 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred * * *."

It is undisputed that when the transaction for the sale of the patterns to the taxpayer was completed, the patterns lost their status as personal property. However, the taxable moment in issue here is the very transaction by which the taxpayer acquired the patterns. That is preliminary to the exception allowed by the board and relied upon by the taxpayer, in their interpretation of R. C. 5701.03. We conclude that the tax was properly assessed on the sale of the patterns to taxpayer, and reverse the decision of the Board of Tax Appeals in this instance as being unreasonable and unlawful.

*Judgment accordingly.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.