134

Emery Industries, Inc., Appellant, *v.* Limbach, Tax Commr., Appellee.

[Cite as Emery Industries, Inc. *v.* Limbach (1989), 43 Ohio St. 3d 134.]

(No. 88-222—Submitted January 11, 1989—Decided June 7, 1989.)

*Taft, Stettinius & Hollister, Stephen M. Nechemias* and *Patrick J. Mitchell,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard C. Farrin,* for appellee.

*Per Curiam.* Ohio imposes a tax on retail sales. R.C. 5739.02. "Sale" includes transactions in tangible personal property and certain specified services. R.C. 5739.01. Personal service transactions are exempted by R.C. 5739.01(B), which provides, in pertinent part:

"* * * Other than as provided in this section, 'sale' and 'selling' do not include professional, insurance, or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made."

Until the General Assembly recently amended the statute to tax *some* personal services (Am. Sub. H.B. No. 694 [139 Ohio Laws, Part II, 3460, 4016-4017]), all services were excluded from the tax because, by definition, they were not sales and, thus, not retail sales, the basis for the tax. *Accountant's Computer Services* v. *Kosydar* (1973), 35 Ohio St. 2d 120, 125-126, 64 O.O. 2d 72, 75, 298 N.E. 2d 519, 523. However, when inconsequential personal services accompanied a transfer of consequential tangible personal property and their charge was not separated from the charge for property, the service was taxed. *Id.* at 129-130, 64 O.O. 2d at 77, 298 N.E. 2d at 526.

A definition for "personal service" was first mentioned in *Recording Devices Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 208, 213, 59 O.O. 2d 225, 227, 283 N.E. 2d 626, 629. Later, in *Koch* v. *Kosydar* (1972), 32 Ohio St. 2d 74, 61 O.O. 2d 329, 290 N.E. 2d 847, paragraph one of the syllabus, this court adopted the following definition:

" 'Personal service,' as used in R.C. 5739.01(B), means an act done personally by an individual; it is, in effect, an economic service involving either the intellectual or manual personal effort of an individual, and is not the saleable product of his skill."

This definition does more than define a "personal service"; it includes a test for determining the inconsequentiality of tangible personal property. The reference to the saleable product of an individual's skill injects the true object test into the definition. This test, announced in *Accountant's Computer Services, supra,* paragraph two of the syllabus, seeks the true object of the transaction, the service or the property, to determine the taxability of the transaction.

Under the *Koch* definition, however, if a personal service is identified, a finding that the true object is tangible personal property seems foreclosed: if an economic service rather than the saleable product of the skill is found to exist, by definition the true object is the service, and the property must be inconsequential. Conversely, the definition seems to indicate that if the saleable product is purchased, there is no personal service and no further need to determine the consequentiality of the tangible personal property.

In light of the foregoing, it is better to separate the consequentiality test from the definition. Thus, we redefine "personal service," as used in R.C. 5739.01(B), to be any intellectual or manual act involving a recognized skill performed by a person who is specifically engaged by the purchaser to perform the act. This definition emphasizes that a purchaser selects the provider of a personal service because of his or her recognized skill.

We also find no formal definition for "professional service." Although in the instant case the BTA described the service as a "personal service," we regard the service as a professional service because it was performed by licensed professionals. A personal service is performed by a skilled individual; a professional service is performed by a skilled and *licensed* individual.

Recently, in *Albright* v. *Limbach* (1988), 37 Ohio St. 3d 275, 525 N.E. 2d 801, we suggested that the definition contained in R.C. 1785.01(A) be used when considering whether a service is a professional service. This definition regards any professional service performed by specified licensed professionals as a professional service. We adopt this as a valid approach and hold that, under R.C. 5739.01(B), a "professional service" is any act performed by a person pursuant to a professional license, certificate, or other legal authority.[2]

Having set forth these definitions, we now apply the exception for personal and professional services, which requires a determination of whether a transfer of property is a consequential element of a service transaction. Earlier cases have applied four tests in making this determination.

First, in *Rice* v. *Evatt* (1945), 144 Ohio St. 483, 30 O.O. 129, 59 N.E. 2d 927, this court examined the proportion that the cost of the materials bore to the total charge, about one to three, and held that the tangible personal

---

[2] Until the proper case is presented, this court will not define "insurance service."

property was a consequential element. The court also distinguished services provided by an optometrist from services provided by a dentist or physician. A purchaser could get a prescription from an optometrist and glasses from an optician, but the medicine furnished a patient by a physican or the dentures by a dentist were, according to the court, in a different category. The optometrist's service was always distinct from the sale of glasses, but the items furnished by the doctor and dentist were not distinguished from their services, apparently because optometry then was a "limited statutory profession." *Id.* at 486, 30 O.O. at 130, 59 N.E. 2d at 928. In contrast, medicine and dentistry were unlimited professions. Thus, in *Rice,* the court relied on both a material-cost-ratio test and, evidently, a second test, a community-expectation test. The former test compares the relative cost of the property with the entire cost; the latter test attempts to discover what the community expects to receive when a purchaser engages a professional or a skilled individual.

In *Cogen* v. *Glander* (1951), 156 Ohio St. 263, 46 O.O. 125, 102 N.E. 2d 1, this court used the material-cost-ratio test, and in *Fritz* v. *Peck* (1953), 160 Ohio St. 90, 51 O.O. 5, 113 N.E. 2d 627, this court evidently applied the community-expectation test to deny exception, under the resale exception, to a supplier of dentures, bridges, and splints to dentists.

Third, in *American Dist. Tel. Co.* v. *Porterfield* (1968), 15 Ohio St. 2d 92, 44 O.O. 2d 64, 238 N.E. 2d 782, and *Machinery Moving* v. *Porterfield* (1971), 26 Ohio St. 2d 99, 55 O.O. 2d 168, 269 N.E. 2d 418, this court considered not only the significance of the cost of the property compared with the cost of the service (as an economic consequence of the transaction), but also the functional consequentiality of the property. Thus, under these tests the cost of the property *vis-a-vis* the service and the function of the property with relation to the service were to be examined.

The true object test, the fourth and current test, was first suggested in the definition for "personal service" contained in *Recording Devices* v. *Porterfield, supra,* and developed further in *Columbus Coated Fabrics* v. *Porterfield* (1972), 30 Ohio St. 2d 307, 59 O.O. 2d 376, 285 N.E. 2d 50. In *Columbus Coated Fabrics,* this court, emphasizing the "not the saleable product of his skill" language of the definition in *Recording Devices,* held that artists' designs, selected for manufacturing wallcoverings, represented the artistic efforts of the individual artists or designers. However, the designs were not specifically created for the taxpayer. The court found the designs had significant intrinsic value and held that the taxpayer was interested in the saleable end product, "the product of the service, not the service itself." *Id.* at 310, 59 O.O. 2d at 378, 285 N.E. 2d at 53.

Next, in *Accountant's Computer Services* v. *Kosydar, supra,* we adopted the true object test in its current form. In paragraph one of the syllabus, we first directed the factfinder to determine whether the transaction involved a consequential or inconsequential service. If it was inconsequential, the exception was not available and the entire transaction was taxable. If a consequential service was rendered, then the factfinder determined whether the tangible personal property was an inconsequential element of the transaction. If inconsequential, none of the consideration was taxable. In paragraph two of the syllabus, the court set forth the true object test:

"In determining whether a mixed transaction constitutes a consequential personal service transaction, a distinction must be made as to the *true object* of the transaction contract; that is, is the real object sought by the buyer the service *per se* or the property produced by the service." (Emphasis *sic*.)

The instant case, in which a professional engineering service was taxed, causes us to reconsider *Accountant's Computer Services* v. *Kosydar, supra.* A review of cases decided in its wake convinces us that the *Accountant's Computer Services* tests are cumbersome and should be modified.

First, as noted in Lindley, Professional and Personal Services Transactions and The True Object Test (July 1987), Ohio Tax Review 1, 4, there is no legislative directive to determine whether a personal service is consequential or inconsequential, as required by syllabus paragraph one of *Accountant's Computer Services, supra.* The only justification offered by the *Accountant's Computer Services* court is that nearly all transactions are mixed with personal service and tangible personal property. Although perhaps true, that does not necessitate the use of consequentiality of services as a test. Instead, the definition we adopt in this case uses as a test whether the purchaser seeks a skilled individual to perform the service. Our definition, we believe, answers the concerns of the *Accountant's Computer Services* court.

In practice, cases have found either that there was no personal service, *Citizens Financial Corp.* v. *Kosydar* (1975), 43 Ohio St. 2d 148, 72 O.O. 2d 83, 331 N.E. 2d 435, *Babcock & Wilcox* v. *Kosydar* (1976), 48 Ohio St. 2d 251, 2 O.O. 3d 416, 358 N.E. 2d 544, or that there was a personal service and the true object test must be applied, *Credit Bureau of Miami Cty., Inc.* v. *Collins* (1977), 50 Ohio St. 2d 270, 4 O.O. 3d 439, 364 N.E. 2d 27, and *Financial Computer Services* v. *Lindley* (1982), 70 Ohio St. 2d 243, 24 O.O. 3d 336, 436 N.E. 2d 1025. Under the statute and in practice, consequentiality of the service has no relevance to the taxability of the transaction. It is the consequentiality of the property that determines whether a mixed transaction is taxable.

Therefore, a finding on whether a personal service is consequential is unnecessary. Either there is a personal or professional service or there is not. If there is a personal or professional service, according to R.C. 5739.01(B), the consequentiality of the transferred property determines whether the transaction is taxable. Thus, under R.C. 5739.01(B), a professional, insurance, or personal service is taxable if it is part of a transaction involving a transfer of tangible personal property as a consequential element and the person performing the service does not make a separate charge for the property. If there is no professional, insurance, or personal service, the entire transaction is taxable.

As discussed above, this court has used four tests in the past. We have reviewed these and other available tests.[3] We believe that the true object test should be used to determine the consequentiality of tangible personal property.

---

[3] Two articles containing surveys of the various tests are Rudnick, Sales and Use Taxes on Services Revisited, New York University 2d Annual Institute on State and Local Taxation and Conference on Property Taxation (1984) 12-1, and Hellerstein, Significant Sales and Use Tax Developments During the Past Half Century (1986), 39 Vand. L. Rev. 961, 973.

The true object test seeks the essential reason the buyer enters the transaction—either to obtain the service or the property produced by the service. In *White Motor Corp.* v. *Kosydar* (1977), 50 Ohio St. 2d 290, 4 O.O. 3d 451, 364 N.E. 2d 252, relied on by the BTA and the commissioner, the court adopted the view that White Motor would not have paid a substantial amount to the engineering companies if it had not received the design drawings. We disagree with that application.

Some examples illustrate the correct application of the true object test. When one hires an attorney to draft a will, he seeks the distribution of his estate at his death. When one engages an accountant to issue an audit opinion, he seeks a review of his finances and a report of his financial standing. Documents are important in both instances because the probate court will not accept the lawyer's word regarding the decedent's bequest, but must see the document. A bank will not accept the accountant's oral version of the client's financial condition, but must see the tangible evidence of the accountant's investigation. The tangible will and the tangible balance sheet are concrete, documentary proof of the testator's desire and the loan applicant's financial status. However, the overriding purpose of each client was something beyond the documents—the distribution of a decedent's estate or the quantification of an ongoing estate. The professional's skill accomplished this; the transferred paper documented the details of the service.

This contrasts with the hiring of a photographer to provide a photograph. Even though a prospective purchaser may seek an accomplished photographer, he wants a photograph. He is seeking property. The overriding purpose of the client in the will transaction is the service of the lawyer to accomplish the distribution of the client's estate at death. The overriding purpose of the purchaser in hiring the photographer is to obtain a picture to depict something.

Accordingly, we hold that in a professional, insurance or personal service transaction in which the charge for the services is not separated from the charge for the property, if the overriding purpose of the purchaser is to obtain tangible personal property produced by the service, the transfer of the property is a consequential element of the transaction and the entire transaction is taxable. If the purchaser's overriding purpose is to receive the service, the transfer of the personal property is an inconsequential element of the transaction, and the entire transaction is not taxable.

Applying these principles to the instant case, we hold that the design firms are professionals and rendered professional services to Emery. Furthermore, Emery sought the installation of equipment. Before this could occur, Emery needed a design so that it could inform its contractor what to build. Emery engaged the design firms to study the problem and to design the equipment. The bid package was an economical means to describe the design for the contractor. The engineer could have gone to each contractor and orally described the proposal, but at a greater cost and, probably, with less efficiency. The design firms transferred documents to Emery. Yet Emery's overriding purpose in hiring them was to obtain their services to design equipment. Thus, the property, the bid documents, were inconsequential and the transactions were not taxable.

Therefore, the BTA's decision is hereby reversed.

*Decision reversed.*

MOYER, C.J., SWEENEY, WRIGHT, H. BROWN and RESNICK, JJ., concur.

HOLMES, J., concurs in judgment only.

DOUGLAS, J., concurs in part and dissents in part.

DOUGLAS, J., concurring in part and dissenting in part. While I concur in parts of the majority opinion, I am particularly concerned about the breadth of paragraph one of the syllabus. It will be interesting to see what repercussions follow from this.