[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 572.]

**WBNS TV, INC., APPELLEE, *v*. TRACY, TAX COMMR., APPELLANT.**

**[Cite as *WBNS TV, Inc. v. Tracy*, 1996-Ohio-301.]**

*Taxation—Sales and use taxes—Purchase of ratings information by a television station from media and market research firm exempt from taxation pursuant to R.C. 5739.01(B)(5).*

———————————

A service rendered by a person or entity need not be specifically "customized" for a particular customer in order to qualify as a personal service transaction excepted from taxation under R.C. 5739.01(B)(5). (*Emery Industries, Inc. v. Limbach* [1989], 43 Ohio St.3d 134, 539 N.E.2d 608, construed.)

———————————

(No. 94-1432—Submitted February 20, 1996—Decided June 5, 1996.)

APPEAL from the Board of Tax Appeals, No. 92-P-584.

———————————

{¶ 1} WBNS TV, Inc. ("WBNS"), appellee, operates a television station in Columbus, Ohio. In October 1990, WBNS entered into a seven-year contract with A.C. Nielsen Company ("Nielsen"). Nielsen is a media and market research firm whose function, generally, is to compile, organize, interpret and present data for customers such as WBNS, and others. To accomplish this objective, Nielsen employs numerous skilled personnel who are experienced in data collection, statistical analysis and sociology.

{¶ 2} Specifically, WBNS entered into the contract with Nielsen to obtain statistical information concerning the demographic makeup and television viewing habits of households within the designated WBNS market/viewing area. The procedure utilized by Nielsen in providing WBNS with television audience viewing estimates is somewhat complex and sophisticated.

{¶ 3} In general terms, Nielsen's responsibility under the contract is to gather certain statistical information by surveying selected samples of households within the designated area. These households keep diaries, which reflect the television viewing activities of certain household members during a specific survey period. Nielsen then interprets and collates this information, and provides it to WBNS on a quarterly basis in the form of written reports. Nielsen owns the reports, and WBNS receives only limited rights to the information. The contract provides that the reports are "furnished merely to convey the information therein contained and that such material remains the property of Nielsen." It appears that the reports provided to WBNS are not unique. Nielsen has apparently contracted with other customers within the WBNS viewing area and these customers receive the same reports.

{¶ 4} WBNS pays Nielsen a base rate of $4,400 a month. WBNS receives a master copy of the survey report for each survey period and it can purchase additional copies for $10 each. WBNS has purchased extra copies, but it does not contest the use tax charged on these purchases.

{¶ 5} On November 2, 1991, WBNS filed an Application for Use Tax Refund with the Ohio Department of Taxation. WBNS claimed that in its quarterly tax return filed for the period July 1, 1991 through September 30, 1991, "it erroneously reported and paid use tax of $781.20 on billings from * * * [Nielsen] representing charges for television rating services."

{¶ 6} On April 30, 1992, the Tax Commissioner, appellant, denied the refund. He found that WBNS "purchased tangible personal property, the reports, and not personal services." The commissioner concluded that Nielsen "was not specifically engaged by [WBNS] to gather the information contained in the reports, but merely offered its reports to the public for sale." WBNS appealed this order to the Board of Tax Appeals ("BTA").

**{¶ 7}** The BTA reversed the commissioner's order, finding that the information provided by Nielsen to WBNS was excepted from taxation under R.C. 5739.01(B)(5). Specifically, the BTA determined that WBNS's "'overriding purpose' was to procure the abilities of Nielsen's specially skilled employees to collect statistical data and perform market research to assist [WBNS] so that it could gain a greater understanding of the nature and character of its changing marketplace. [WBNS's] 'overriding purpose' was not the report itself. Since * * * [WBNS's] overriding purpose was to receive these services, the transfer of the personal property was an inconsequential element of the transaction, and the entire transaction is not taxable."

**{¶ 8}** This cause is now before this court upon the commissioner's appeal as of right.

_____

*Vorys, Sater, Seymour & Pease, Raymond D. Anderson* and *Anthony L. Ehler; Jones, Day, Reavis & Pogue* and *Roger F. Day*, for appellee.

*Betty D. Montgomery,* Attorney General, and *Richard C. Farrin*, Assistant Attorney General, for appellant.

*Dale V. Bring*; *Vorys, Sater, Seymour & Pease* and *Gary J. Saalman*, urging affirmance for *amicus curiae*, Ohio Association of Broadcasters.

_____

**DOUGLAS, J.**

**{¶ 9}** The issue in this appeal is whether the purchase of ratings information by a television station is exempt from taxation pursuant to R.C. 5739.01(B)(5).[1] This statute provides, in part, that:

---

1. WBNS applied for a use tax refund. R.C. 5741.02(C)(2) provides that:

"The tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property or services, nor to the storage, use, or consumption or benefit in this state of tangible personal property or services purchased under the following described circumstances:

"* * * Other than as provided in this section, 'sale' and 'selling' do not include professional, insurance, or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made."

{¶ 10} The issue presented in this case has been previously considered by this court. See *Avco Broadcasting Corp. v. Lindley* (1978), 53 Ohio St.2d 64, 7 O.O.3d 145, 372 N.E.2d 350. In *Avco*, we held that ratings information provided by Nielsen to a television and radio broadcasting company, Avco, was a nontaxable personal service transaction. Specifically, we found that "the true object of the transactions herein was 'the receipt of the information collected by the employees of * * * [Nielsen].' The written reports were but inconsequential elements of the transactions; hence, the transactions are not taxable. Cf. *The Andrew Jergens Co. v. Kosydar* (1973), 35 Ohio St.2d 120, [64 O.O.2d 72] 298 N.E.2d 519 (reported with *Accountant's Computer Services v. Kosydar, supra*)." *Avco*, *supra*, 53 Ohio St.2d at 69, 7 O.O.3d at 147, 372 N.E.2d at 353.

{¶ 11} The commissioner suggests, however, that *Avco* is no longer viable. The commissioner found that our holding in *Avco* has been "undermined" by *Emery Industries, Inc. v. Limbach* (1989), 43 Ohio St.3d 134, 539 N.E.2d 608, which, according to the commissioner, supports a finding that the purchase of market ratings information by a television station involves a taxable transaction. We disagree.

{¶ 12} In *Emery*, at paragraph one of the syllabus, a majority of this court redefined "personal service," holding that "a 'personal service' is any intellectual or manual act involving a recognized skill performed by a person who is

---

"* * *

"(2) Except as provided in division (D) of this section, tangible personal property or services, the acquisition of which, if made in Ohio, would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code."

specifically engaged by the purchaser to perform the act." This court modified the prior definition of "personal service" set forth in *Koch v. Kosydar* (1972), 32 Ohio St.2d 74, 61 O.O.2d 329, 290 N.E.2d 847, determining that "it is better to separate the consequentiality test from the definition." *Emery*, *supra*, 43 Ohio St.3d at 136, 539 N.E.2d at 611. Specifically, the majority in *Emery* noted that, "Under the *Koch* definition, however, if a personal service is identified, a finding that the true object is tangible personal property seems foreclosed: if an economic service rather than the saleable product of the skill is found to exist, by definition the true object is the service, and the property must be inconsequential. Conversely, the definition seems to indicate that if the saleable product is purchased, there is no personal service and no further need to determine the consequentiality of the tangible personal property." *Id*.

{¶ 13} The commissioner contends that this court in *Emery* intended to "narrow" the definition of "personal service." The commissioner asserts that the language "by a person who is specifically engaged by the purchaser to perform the act" presumes that a transaction cannot constitute a personal service unless the service is "customized" for a specific purchaser. In this regard, the commissioner urges that the media research information supplied by Nielsen to WBNS was not a personal service transaction because Nielsen did not produce the reports specifically for WBNS. The commissioner claims that WBNS simply subscribed to a standard ratings publication issued by Nielsen, and that these exact reports are available to other customers within the viewing area.

{¶ 14} The commissioner's focus is misplaced. *Emery* does not require that the service be customized for the purchaser in order to qualify as a personal service transaction. The definition of "personal service" in *Koch*, *supra*, was modified in *Emery* simply to eliminate the consequentiality component from the definition. The new definition emphasizes that the customer "selects the provider of a personal service because of his or her recognized skill." *Emery*, *supra*, 43 Ohio St.3d at 136,

539 N.E.2d at 611. Thus, a service rendered by a person or entity need not be specifically "customized" for a particular customer in order to qualify as a personal service transaction excepted from taxation under R.C. 5739.01(B)(5).

{¶ 15} In this case, WBNS clearly engaged Nielsen to provide an intellectual and manual act involving a recognized skill. Nielsen expended personal effort to identify a pool of participants and to secure their participation in the ratings process. Nielsen developed the procedure and it employed personal effort in telephoning participants, sending diaries to the participants, collecting the information, and analyzing the polling results. Nelson also examined the demographic nature of the surveyed households and compiled this information for use in a meaningful analysis. Accordingly, we find that Nielsen did indeed perform a personal service for WBNS.

{¶ 16} Having concluded that Nielsen provided a personal service for WBNS, we must now determine whether the "overriding purpose" of WBNS was to receive the service or the actual tangible personal property, *i.e*., the written reports. The commissioner claims that the overriding purpose of WBNS was to receive the reports provided by Nielsen, not Nielsen's services. Again, we disagree.

{¶ 17} In *Emery*, paragraph four of the syllabus, we held that:

"In a professional, insurance, or personal service transaction in which the charge for the services is not separated from the charge for the property, if the overriding purpose of the purchaser is to obtain tangible personal property produced by the service, the transfer of the property is a consequential element of the transaction and the entire transaction is taxable. If the purchaser's overriding purpose is to receive the service, the transfer of the personal property is an inconsequential element of the transaction, and the entire transaction is not taxable."

{¶ 18} In applying these principles, the BTA concluded, and we agree, that WBNS's overriding purpose was to receive the service provided by Nielsen.

Clearly, "[i]t was the intellectual and manual personal efforts of employees of Nielsen that was sought by [WBNS], and not the inconsequential tangible personal property which was transferred, for purposes of communication, as an incidental element without a separate charge." *Andrews Jergens Co. v. Kosydar* (1973), 35 Ohio St.2d 120, 134, 64 O.O.2d 72, 80, 298 N.E.2d 519, 528.

{¶ 19} For the reasons set forth herein, we find that the acquisition of ratings reports by WBNS from Nielsen is exempt from taxation pursuant to R.C. 5739.01(B)(5). The decision of the BTA is reasonable and lawful and, therefore, is affirmed.

*Decision affirmed.*

MOYER, C.J., PAINTER, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., DISSENTS.

MARK P. PAINTER, J., of the First Appellate District, sitting for WRIGHT, J.

_____

**COOK, J., dissenting.**

{¶ 20} I respectfully dissent because I conclude that WBNS TV contracted for a standardized publication from Nielsen and the transaction is thus not a personal service.

{¶ 21} This court's definition of personal service in *Emery Industries, Inc. v. Limbach* (1989), 43 Ohio St.3d 134, 539 N.E.2d 608, encompassed two parts. The first part of the definition describes what a service is: "Any intellectual or manual act involving a recognized skill." The second part of the definition details how the service is to be personal, that is, "performed by a person who is specifically engaged by the purchaser to perform the act." *Id.* at paragraph one of the syllabus.

{¶ 22} The majority's view of personal service places an emphasis on when a service is engaged. Engaging a service provider prior to the performance of the act involving recognized skill renders the service personal, says the majority. This broad definition of personal service serves the function of including many more

mixed transactions under the umbrella of "personal service," thereby requiring application of the "true object" test to weed out the tangible personal property transfers.

{¶ 23} The timing of the engagement ought not to bear on the analysis. Where, as here, the service is a standardized compilation to be sold to subscribers, the service does not meet the *Emery* definition. Nielsen was not specifically engaged by WBNS to do a survey. Whether or not WBNS contracted with Nielsen, Nielsen was going to use its skill to compile its standardized, objective reports for other industry subscribers. While the efforts of Nielsen are a service, those efforts do not qualify as personal service. *Emery* requires that personal services be customer specific. Using this narrower construction of "personal," the "true object" test is applied only to mixed transactions first determined to be "personal services."

{¶ 24} Even accepting the analysis of the majority that the service is personal, when applying the true object test, I would find the transaction taxable. The evidence in this case demonstrated that the physical reports were just as important to WBNS as the information and could not reasonably be dubbed an inconsequential element of the transaction.

_____