[Cite as *Dayton Physicians, L.L.C. v. Testa*, 2016-Ohio-5348.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

|                                    |   |                                              |
|------------------------------------|---|----------------------------------------------|
| DAYTON PHYSICIANS, LLC             | : |                                              |
|                                    | : | Appellate Case No. 26881                     |
| Appellant                          | : |                                              |
|                                    | : | BTA Case No. 2014-3986                       |
| v.                                 | : |                                              |
|                                    | : | (Administrative Appeal from                  |
| JOSEPH W. TESTA, TAX               | : |  Board of Tax Appeals)                       |
| COMMISSIONER OF OHIO               | : |                                              |
|                                    | : |                                              |
| Appellee                           | : |                                              |
|                                    | : |                                              |

. . . . . . . . . .

# O P I N I O N

Rendered on the 12th day of August, 2016.

. . . . . . . . . .

JAMES M. KELLY, Atty. Reg. No. 0016984, and JARROD M. MOHLER, Atty. Reg. No. 0072519, Robbins, Kelly, Patterson & Tucker, 7 West Seventh Street, Suite 1400, Cincinnati, Ohio 45202-2417
      Attorneys for Appellant

MICHAEL DeWINE, Atty. Reg. No. 0009181, by BARTON A. HUBBARD, Atty. Reg. No. 0023141, Office of the Attorney General of Ohio, 30 East Broad Street 25th Floor, Columbus, Ohio 43215
      Attorney for Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Appellant Dayton Physicians, LLC, appeals from a determination of the

Board of Tax Appeals affirming an order of the Tax Commissioner of Ohio imposing a tax on the purchase of medical transcriptionist services under the statute that imposes a tax on automatic data processing services. Dayton Physicians argues that medical transcriptionist services are a personal or professional service that is not subject to Ohio sales or use tax.

{¶ 2} We conclude that the final determination of the Board of Tax Appeals (BTA) is not unreasonable or unlawful and that the record contains reliable and probative evidence to support the BTA's findings. Therefore, the decision and order of the BTA is Affirmed.

## I. Course of Proceedings

{¶ 3} Dayton Physicians is a medical practice providing urology, radiation oncology, pathology and hematology care. Dayton Physicians utilizes medical transcription services for transcribing medical reports, tests, medical analysis, summaries, histories, diagnoses, operative notes, lab reports and discharges. The Ohio Department of Taxation conducted an audit of Dayton Physicians' purchases from January 1, 2010 to March 31, 2013. As a result of the audit, Dayton Physicians was assessed a use tax for the purchase of medical transcription services. Dayton Physicians petitioned for reassessment, reflecting that the disputed amount is $97,202.87. Record at pg. 10. The Tax Commissioner denied the reassessment, concluding:

> In summary, the sole act of medical transcription is not an "act performed by a person pursuant to a professional license, certificate or

other legal authority." Many transcriptionists just need to be accurate at typing and the spelling of medical terms. Therefore, the lone act of medical transcription is not exempt from tax as a professional service, rather it is "processing of others' data, including keypunching or similar data entry services together with verification thereof…" The transcriptionist is taking information (data) from notes, tests, tapes, medical reports, medical analysis, summaries, histories, diagnoses, operative notes and other sources and using a computer to place them into another medium. This is a taxable service. However, in situations where the facts show that a taxpayer is not purchasing just medical transcription service where data is transcribed into a different form, but instead has contracted with a company and received additional services of a personal nature, a finding that the true object of the contract is a personal service may be correct.

In the present matter at issue in this Final Determination, the petitioner has not submitted a contract or other probative substantive evidence to demonstrate that the service the petitioner has purchased is anything but taxable data processing service. The auditor's review found the transcription services to be taxable automatic data processing services, and the petitioner has not shown this to be incorrect. The objection is denied. Therefore, the assessment shall stand as issued.

{¶ 4} Dayton Physicians appealed to the Board of Tax Appeals. At the hearing before the BTA, Dayton Physicians presented three witnesses, and the State presented one witness.  Holly Card, employed by Dayton Physicians as a Practice Administrator,

testified that a medical transcriptionist "brings a well-written document that is well interpreted by all collaborating physicians who are involved in the patient's care." Transcript ("T.") at 33. Card explained that a good transcriptionist interprets what the physician is saying, must understand the specialty and flags discrepancies, which are returned to the doctor for edits. T. at 35-36. Card verified that Dayton Physicians has no written contract with its transcription service. T. at 55. Vicki Lynn DiMarco, an employee of Columbus Oncology Associates, testified, based on her 29 years as a medical transcriptionist, that her job is to provide a verbatim transcript of what the doctor dictates on a microcassette. DiMarco testified that it is a collaborative process between her and the doctor, which requires her to flag ambiguities and send them back to the physician for completion or correction. T. at 75. DiMarco stated that the work is not automatic, and could not be performed by someone without training and experience. T. at 77. Dayton Physicians also provided testimony from Craig Froehle, a systems engineer for healthcare delivery systems, who researches and teaches healthcare delivery options at the University of Cincinnati. Dr. Froehle testified that his research included a comparison of the process of medical transcription completed by humans with that completed by automatic dictation software. T. at 112. Dr. Froehle's research found a significant reduction in physician satisfaction and perceived usability when the transcription is done automatically with Dragon software. T. at 119. Dr. Froehle opined that a human transcriptionist adds significant value to the process by cleaning up an audio recording through formatting and the elimination of incidental statements such as "umm" and "ah," unnecessary repetitions of the same facts, or conversational statements occurring when the physician is interrupted during dictation. T. at 160. It was Dr. Froehle's expert

opinion that human medical transcription services are a personal service that entails listening, understanding, comprehending, interpreting, and the putting into written words the physician's intent. T. at 127.

{¶ 5} At the hearing, the State presented one witness. Tracy Ruegg, a former director of the Ohio Board of Nursing, testified that medical transcriptionists are not licensed medical professionals and have no authority to alter, adjust, or make any substantive changes to the notes dictated by a physician. T. at 212. As a certified nurse practitioner practicing at The Ohio State University James Cancer Hospital, Ruegg has dictated medical notes for processing by an outsourced medical transcriptionist for many years. T. at 170-172. Reugg testified that it was inappropriate for a transcriber to fill in blanks based on prior reports, records, or common knowledge, because it is their duty to transcribe dictation verbatim, and notify the physician of any discrepancies. T. at 209.  In Ruegg's opinion, a medical transcriptionist would be engaged in the unauthorized practice of medicine if the transcriptionist changed a conjunction in a sentence, or interpreted medical records. T. at 209-211. Ruegg agreed that it is a simple collaborative process, which requires certain skills, but testified that it is the physician's responsibility to make any corrections, fill in blanks, and verify accuracy. T. at 217-226.

{¶ 6} Accepted into evidence at the BTA hearing were Exhibits 4 and 5, which document final determinations of the Tax Commissioner for two other medical practices, in which the Commissioner concluded that medical transcriptionist services were personal or professional services not subject to tax. Neither of these decisions provide any factual findings of the medical transcription services at issue in those instances, so a comparison with the transcription services provided to Dayton Physicians in the case before us is not

possible. Both of these decisions were made before the Tax Commissioner's final determination in the case before us that Dayton Physicians' purchase of medical transcriptionist services was taxable as an automatic data processing service. The record also contains documentation describing certificate or associate degree programs for medical transcription training at the University of Akron, Columbus State Community College, Owens Community College, Columbus State University, Hocking College, Washington State Community College, Lakeland Community College, Zane State College, University of Northwestern Ohio, Eastern Gateway Community College, and Belmont College. Record at 41-90. The record also contains two job descriptions provided by the Ohio Department of Administrative Services for state employees holding the positions of a medical transcriptionist and a data entry clerk. Record at 37-40.

{¶ 7} The BTA affirmed the decision and order of the Tax Commissioner after finding, based on the evidence presented, that the "transcriptionist does not study, alter, analyze, interpret or adjust the material," and does not fit any definition of personal or professional service defined under R.C. 5739.01(Y)(2)(a)-(j). The BTA found that the transcriptionist reduces the physician's spoken word to written form, and that, while undoubtedly transcriptionists who perform their duties accurately and in a timely fashion are preferred by their customers, there is no specialized training required to perform their jobs, no licensing or certification process that must be completed in order to work as a transcriptionist, and no regulatory authority that oversees the profession. Based on these findings, the BTA concluded that the medical transcription services purchased by Dayton Physicians during the audit period did not constitute a personal or professional service. From the final order of the BTA, Dayton Physicians appeal.

**II. Standard of Review**

{¶ 8} An appeal from a decision of the board of tax appeals involving a tax assessment made by the tax commissioner is provided by R.C. 5717.04. In *Global Knowledge Training, L.L.C. v. Levin*, 127 Ohio St.3d 34, 2010-Ohio-4411, 936 N.E.2d 463, ¶ 12, the Supreme Court of Ohio explained the proper standard of reviewing an administrative appeal from the BTA:

> Our standard of review from a decision of the BTA is whether it is "reasonable and lawful." While we "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion," we will affirm the BTA's resolution of factual issues if the record contains reliable and probative evidence that supports the BTA's findings. [T]the tax commissioner's findings "are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." Consequently, the taxpayer carries the burden "to show the manner and extent of the error in the Tax Commissioner's final determination." Specifically, "when an assessment is contested, the taxpayer has the burden ' "to show in what manner and to what extent" ' the commissioner's investigation and audit, and the findings and assessments based thereon, were faulty and incorrect."

(Internal citations omitted.) *Id.* at ¶ 12.

**III. The Record Supports the BTA's Conclusion that Medical Transcription**

**Services Performed for Dayton Physicians Were Not a Personal Service**

{¶ 9} For its first assignment of error, Dayton Physicians asserts as follows:

WHETHER THE BOARD OF TAX APPEALS ERRED IN APPLYING

THE CONSUMER USE TAX STATUTE TO THE FACTS OF THE CASE.

{¶ 10} "Automatic data processing services", as defined by R.C. 5739.01(Y)(1)(a), are subject to a use tax, while personal and professional services, defined by R.C. 5739.01(Y)(2) and R.C. 5739.01(B)(3)(e), are not subject to a use tax. " 'Automatic data processing' means processing of others' data, including keypunching or similar data entry services together with verification thereof, or providing access to computer equipment for the purpose of processing data," as defined by R.C. 5739.01(Y)(1)(a). " 'Personal and Professional Services' means all services other than automatic data processing, computer services or electronic information services, including but not limited to:

(a) Accounting and legal services such as advice on tax matters, asset management, budgetary matters, quality control, information security, and auditing and any other situation where the service provider receives data or information and studies, alters, analyzes, interprets, or adjusts such material;

(b) Analyzing business policies and procedures;

(c) Identifying management information needs;

(d) Feasibility studies, including economic and technical analysis of existing or potential computer hardware or software needs and alternatives;

(e) Designing policies, procedures, and custom software for collecting business information, and determining how data should be summarized,

sequenced, formatted, processed, controlled, and reported so that it will be meaningful to management;

(f) Developing policies and procedures that document how business events and transactions are to be authorized, executed, and controlled;

(g) Testing of business procedures;

(h) Training personnel in business procedure applications;

(i) Providing credit information to users of such information by a consumer reporting agency, as defined in the "Fair Credit Reporting Act," 84 Stat. 1114, 1129 (1970), 15 U.S.C. 1681a(f), or as hereafter amended, including but not limited to gathering, organizing, analyzing, recording, and furnishing such information by any oral, written, graphic, or electronic medium;

(j) Providing debt collection services by any oral, written, graphic, or electronic means."

R.C. 5739.01(Y)(2).

{¶ 11} We agree that medical transcriptionist services do not fit any subsection of R.C. 5739.01(Y)(2), which provides a non-exhaustive list of personal or professional services. Applying the statutory definition, the BTA was required to find that medical transcriptionist services were not personal or professional services if the services fit under the definition of automatic data processing, computer services or electronic information services. The BTA did find that the medical transcriptionist services provided to Dayton Physicians was simply the processing of others' data by transferring dictated words into a typed written form, which required no professional skills. While it is undisputed that Ohio does not license or regulate the field of medical transcription, several colleges in Ohio

offer certificate programs in medical transcription in order to train future transcriptionists with the skills necessary to accomplish their tasks. Graduates of these college certificate programs learn skills enabling them to succeed in their profession. There is also evidence in the record that these skills can be learned on the job, through experience in the field.

{¶ 12} In *Emery Indus., Inc. v. Limbach*, 43 Ohio St. 3d 134, 539 N.E.2d 608 (1989), the Supreme Court of Ohio addressed the definitions of a "personal service" and a "professional service," as used in the tax code. The Court declared that a "professional service" is any act performed by a person pursuant to a professional license, certificate or other legal authority. *Id.* at syllabus. In Ohio, the Chancellor of the Ohio Board of Regents, University System of Ohio, is the legal authority for approval of degrees and certificate programs, pursuant to R.C. 3333.04, and OAC 3333-1-04. Therefore, it is possible to establish that a medical transcriptionist provides a professional service if the transcriptionist is providing services pursuant to the skills obtained in an approved certificate program. In the case before us, the record does not support a finding that the transcriptionists used by Dayton Physicians held certificates in medical transcription from an approved college program and utilized the professional skills acquired by that program. Therefore, the BTA correctly concluded that the medical transcriptionist services provided to Dayton Physicians during the audit period did not constitute professional services.

{¶ 13} In *Emery Indus., Inc. v. Limbach*, *supra*, the Supreme Court of Ohio declared that a "personal service" as used in the tax code is "any intellectual or manual act involving a recognized skill performed by a person who is specifically engaged by the purchaser to perform the act." *Id.* at syllabus. The court recognized that the purchase of personal services is often a mixed transaction involving both services and property that

requires a determination of the "overriding purpose" or "true object" of the transaction. *Id.* at 139. Emery, a chemical manufacturer, hired a contractor to design equipment, which included both design services and the preparation of bid documents. *Id.* at 135. The Court found that the preparation of documents was incidental to the design services, because the overriding purpose of the transaction was to provide professional design services. *Id.* at 139. In the case before us, the BTA's decision incorporated its reasoning from a companion case, *Columbus Oncology Associates v. Testa*, BTA Case No. 2014-3984 (Sept. 28, 2015), in which it reviewed the holding of *Emery* and considered the physician's objectives in purchasing transcription services. To determine the physician's objectives, the BTA considered the expectations of the physicians as well as the job duties of the transcriptionists. The BTA noted that none of the physicians who work for Dayton Physicians testified, and none of the transcriptionists who transcribe for Dayton Physicians testified, leaving the record incomplete. Nonetheless, the BTA considered the expert testimony provided by both parties, and found that the Dayton Physicians' purchase of medical transcriptionist services had the sole objective to create a verbatim record of the physician's dictation, and the transcriptionists did not apply cognitive skills or analytical thought to study, alter, analyze, interpret, or adjust the data. A reasonable finding was made that the true object or overriding purpose of the transaction was to produce a written transcript, from which the physician could verify its accuracy and apply his or her professional skills to adjust or alter to complete the medical record needed for patient care. Based on the evidence presented, the BTA reasonably concluded that the medical transcription services purchased by Dayton Physicians did not constitute a personal or professional service, as those terms are defined in R.C. 5739.01(Y)(2) and

R.C 5739.01(B)(3)(e). Accordingly, the BTA did not err in applying the statutory definitions, and Dayton Physicians' first assignment of error is Overruled.


## IV. The Failure to Follow Prior Precedent Was Not Unreasonable or Unlawful

{¶ 14} For its second assignment of error, Dayton Physicians asserts as follows:

THE TAX COMMISSIONER AND BOARD OF TAX APPEALS ACTED UNREASONABLY WHEN THEY DISREGARDED TWO PREVIOUS FINAL DETERMINATION LETTERS OF THE OHIO TAX COMMISSIONER ON THE IDENTICAL LEGAL ISSUE.

{¶ 15} Dayton Physicians argues that the BTA decision and order was unreasonable and unlawful based on its failure to follow established precedent. The record regarding the final determination that two other medical practices were not subject to a tax for their purchase of transcription services is insufficient to determine that the facts established by the evidence in those cases are indistinguishable. In the case before us, the tax commissioner reached his conclusion that the services were taxable based on the specific facts presented by Dayton Physicians, noting that under different facts a different conclusion could be reached. The tax commissioner stated, "in situations where the facts show that a taxpayer is not purchasing just medical transcription service where data is transcribed into a different form, but instead has contracted with a company and received additional services of a personal nature, a finding that the true object of the contract is a personal service may be correct." This statement confirms that the decision of the BTA was decided on the record of the evidence presented by Dayton Physicians. The facts presented to the BTA for the other two assessment decisions involving medical

transcriptionist services may have involved distinguishable facts. We agree with the Tax Commissioner that under different facts a finding that the true object of the contract is a personal or professional service might be correct. For example, a non-taxable professional service may be found when a taxpayer enters into a written contract with a transcriptionist service specifying that each transcriptionist must hold a certificate from an approved college program and must utilize specific professional skills acquired from the certificate program to complete the transcriptionist's task. Based on the record before us, we cannot conclude that the previous two BTA cases are indistinguishable on their facts. Without a sufficient record, we cannot find, as a matter of law, that the BTA should have applied and followed its prior decisions involving medical transcriptionist services.

**{¶ 16}** The second assignment of error is overruled.


### V. Conclusion

**{¶ 17}** Both assignments of error having been overruled, the decision of the Board of Tax Appeals is Affirmed.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.


Copies mailed to:

James M. Kelly
Jarrod M. Mohler
Michael DeWine
Barton A. Hubbard